In re NITE LITE INNS, a California corporation, Debtor.

In re GROSVENOR SQUARE RESTAURANT, a joint venture, consisting of Grosvenor & Grosvenor, a partnership, and B & R Food Service, Inc., a California corporation, Debtor.

In re J. Mark GROSVENOR, Debtor.

In re Judson R. GROSVENOR & Rachel J. Grosvenor, Joint Debtors.

Bankruptcy No. 79–03350–K.

United States Bankruptcy Court, S. D. California.

Feb. 4, 1982.

Colin W. Wied and James P. Hill, San Diego, Cal., for debtors.

Louise D. Malugen, San Diego, Cal., for C. Hugh Friedman, trustee.

David L. Buchbinder, San Diego, Cal., for Official Creditors' Committee.

Keith E. McWilliams and Michael Y. Mackinnon, San Diego, Cal., for Burke Investors.

Robert G. Sullivan, San Diego, Cal., for Vernon E. Taylor.

Robert L. Rentto, San Diego, Cal., for Creditors Fleet, Ratty and Rudolph.

Michael T. Andrew and Nathan Jones, San Diego, Cal., for Security Pacific National Bank.

James T. Waring, San Diego, Cal., for Tajico Vista, Inc.

## MEMORANDUM OF OPINION RE: CONFIRMATION OF PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE CODE

HERBERT KATZ, Bankruptcy Judge.

Nite Lite Inns, a California corporation, filed for relief under Chapter 11 of the Code on December 7, 1979. The major assets of Nite Lite Inns were three hotels located in Ontario, San Diego and National City. The San Diego hotel consists of 156 rooms, 2 banquet rooms and a 14-unit recreational vehicle park. Cost overruns arising out of the construction of the San Diego hotel in 1979 were the major contributing factor to the filing of the reorganization proceeding herein.

On March 4, 1980, Grosvenor Square Restaurant filed a petition under Chapter 11 of the Code. The major asset of this debtor is a restaurant located immediately adjacent to the San Diego hotel.

Shortly thereafter, on June 6, 1980, J. Mark Grosvenor, Judson R. Grosvenor and Rachel J. Grosvenor filed individual petitions under Chapter 11 of the Code. The Grosvenors are the major stockholders and principals of the other related debtors. While each individual debtor had particular personal debts, the majority of their debts arose out of personal guarantees made to creditors of the other business estates. The above Chapter 11 cases were subsequently consolidated for administrative purposes.

The consolidated Nite Lite Inns bankruptcy is the classic example of what a Chapter 11 case under the Code should be and not be, all at the same time. From early on in the case the Official Creditors' Committee and individual creditors have actively participated in the bankruptcy process. As a result of their direct involvement a trustee was appointed to step in and operate the debtor's various businesses. Creditors have also submitted two reorganization plans and through their pointed objections have caused the debtors to amend their plan of reorganization four times.

On the other hand, the effort to confirm a plan of reorganization has been a bitter struggle almost from the inception of the case. Every step of the way the antagonistic forces present in the case have resulted in protracted proceedings and litigation. Concessions on behalf of the parties have been few and far between. Only after two years of constant upheaval have the parties' positions softened to the point that rational business judgment has prevailed. However, this climate of compromise has not been achieved without an enormous cost in terms of court time lost, creditor hardship and attorneys' fees. To date total interim fee applications on behalf of the estate, the

trustee and the Creditors' Committee alone have exceeded $400,000. Considering that the combined debtors' estates have less than $4,500,000 in debts, it seems that the costs involved in reorganizing these debtors have far exceeded the wildest expectations of a controlled system of reorganization.

On August 12, 1981, the debtors submitted their fourth amended plan of reorganization. This plan basically envisions a 100-percent payout, plus interest, over 36 months. At the end of 36 months the debtors intend to obtain new long-term financing or in the alternative sell the San Diego hotel. Numerous objections were filed in opposition to the plan and hearings were held on October 21, 29 and 30, November 5 and 24 and December 3, 1981, to deal with them. One by one almost every objection was either withdrawn or compromised through last-minute changes in the plan. After the ballots were tallied it became evident that only one class of creditors had failed to accept the plan. Because of Class 8's rejection of the plan the debtors requested that the court confirm or "cram down" the plan over their objection under 11 U.S.C. § 1129.

Class 8, a class consisting of an entity known as Burke Investors, vigorously opposes the use of cram down in this case. At the hearings on confirmation, Burke Investors objected to confirmation of the plan on the grounds that it is not feasible [11 U.S.C. § 1129(a)(11)], not fair and equitable [11 U.S.C. § 1129(b)(2)], not proposed in good faith [11 U.S.C. § 1129(a)(3)], provides for an improper classification [11 U.S.C. § 1129(a)(1)], does not provide this creditor with property of a value that is not less than the amount such holder would receive if the debtors were liquidated [11 U.S.C. § 1129(a)(7)(A)(ii)(b)(2)(B)(i)], and lastly that consolidation of the cases is not in the best interests of creditors. Burke Investors also moved to block the use of some $300,-000 on deposit pending a final determination as to whether Burke Investors is entitled to such sums. This opinion is filed to deal with each of Burke Investors' objections and to determine whether the debtors' fourth amended plan should be confirmed.

*Classification of Claims*

The fourth amended plan classified Burke Investors as Class 8. All other unsecured creditors were placed in Class 9. Class 8 was to receive post-confirmation interest at a 10-percent rate while Class 9 claims were to receive the rate that is in effect pursuant to Internal Revenue Code § 6621 (26 U.S.C. § 6621). At the hearing on confirmation the debtor orally modified the plan to pay Class 8 the higher interest rate provided by 26 U.S.C. § 6621. Thereafter, Burke Investors orally withdrew their objection to the plan on the basis of improper classification. The withdrawal of this objection leaves Class 8 as the only nonaccepting class.

*Feasibility under 11 U.S.C. § 1129(a)(11)*

The plan in this case anticipates that payments will be made out of current surplus operating revenues. In this regard the debtors presented testimony and a pro forma projection which would tend to show that the debtors could make the payments provided for in the plan. Burke Investors submitted expert testimony which tended to show that the debtors' expectations as to future operating revenues were not realistic in light of recent economic trends in the hotel industry. It was the expert's opinion that the debtors would not be able to meet the payment schedule under the plan.

Section 1129(a)(11) [11 U.S.C. § 1129(a)(11)] provides that a plan may be confirmed if:

"(11) Confimation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

This section is a slight elaboration of the law that developed under the Act regarding the application of the word "feasible." S.Rep.No.95–989, 95th Cong., 2d Sess. 126 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Had the plan merely provided for periodic payments with a possible refinancing at the end of 36 months, the court would have

denied confirmation on this ground alone. However, the plan provides for a liquidation of the San Diego hotel in the event the debtors default in the payment scheme of the plan. It is undisputed that the value which would be realized upon a sale of the San Diego hotel is greater than all debts owed in the case. The plan also provides for the bankruptcy court to retain jurisdiction over the operation and enforcement of the plan.

■ Under these circumstances it appears that in the event the debtors defaulted on the payment schedule of the plan, a subsequent sale would provide the creditors with all sums promised to them. The liquidation provisions, therefore, bring the plan in compliance with 11 U.S.C. § 1129(a)(11) and render the plan feasible. *See also* H.R. Rep.No. 95–595, 95th Cong., 1st Sess. 412 (1977).

*Good-Faith and Chapter 11 Plans*

Section 1129(a)(3) [11 U.S.C. § 1129(a) (3)] requires that a plan be proposed in good faith and not by any means forbidden by law. The term "good faith" is not specifically defined in the Code. Case law both under the Act and the Code has dealt with the term in varying ways. *See* discussion and cases cited in *In re Victory Construction, Inc.*, 7 BCD 257 (C.D.Cal. 1981); *In re BBT*, 11 B.R. 224, 7 BCD 769, 775 (Bkrtcy.D.Nev.1981). Essentially, a reorganization plan is proposed in "good faith" when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

At the hearing on confirmation Burke Investors presented evidence that an offer of sale for the San Diego hotel had been made which, if accepted, would provide enough funds to pay all creditors in full. From an evidentiary standpoint there is considerable question as to whether the offer was validly made and whether it would have been enforceable at the time of the confirmation hearing. The debtors claim that even if the offer were valid, it would have only provided enough money to pay off creditors and would not have compensated the debtors for their rehabilitation efforts over the past two years.

Burke Investors argues that the plan was not filed in good faith because the debtors have refused to take affirmative action with respect to the offer of sale made for the San Diego hotel. In other words, it is claimed that the debtors are misleading their creditors through the promotion of a work-out plan when they have the ability to effectuate a sale and a 100-percent payoff in the immediate future.

The primary purpose of the reorganization chapters of both the Act and Code has been to promote restructuring of debt and the preservation of economic units rather than a dismantling of the estate. This does not mean, however, that a liquidation plan is improper under the right set of circumstances. *See* 11 U.S.C. § 1129(a)(11); *In re L. N. Scott Co.*, 13 B.R. 387, 7 BCD 1280 (Bkrtcy.E.D.Pa.1981). What it does mean is that the primary focus and effort of a Chapter 11 proceeding should be a reorganization. Liquidation plans should be secondary concerns unless the debtor chooses such a course of action or the necessities of justice require the confirmation of a liquidation plan. *See, e.g., In re L. N. Scott Co., supra.*

The records of the case show that the debtors filed the original proceeding at a time when threatened attachments by creditors could have forced a shutdown of the debtors' San Diego hotel. Since that time the debtors have endeavored to operate their business as a going concern for the benefit of all creditors and themselves. The primary concern of the debtors has consistently been one of reorganization with a goal of preserving their equity interest in Nite Lite Inns San Diego. Evidence presented indicates that the debtors have only considered liquidation of the hotel when an effective reorganization seemed impossible to achieve. This intent is carried forward into the plan by requiring a liquidation of the hotel if the debtors cannot live up to their reorganization promises.

The efforts of the debtors evince that the case and plan were filed under the belief that there was a reasonable likelihood of reorganizing the debtor. An effective reorganization is consistent with the objectives and purposes of Chapter 11 of the Code. Therefore, there is no showing that the plan is filed in bad faith.

*Substantive Consolidation*

The plan herein envisions a substantive consolidation of the assets and debts of the separate debtor entities. Substantive consolidation is not specifically provided for in the Code except in relation to joint debtors under 11 U.S.C. § 302(b). Rule of Bankruptcy Procedure 117 provides for consolidation in certain cases which are not applicable herein. However, the Advisory Committee's Note (Collier Bankruptcy Rules, Pamphlet Edition 1979) to Rule 117 provides that consolidation of the estates of separate bankrupts may sometimes be appropriate when the affairs of an individual and a corporation owned or controlled by him are so intermingled that the court cannot separate their assets or liabilities. In the past courts have substantively consolidated debtors' estates where the consolidation was warranted; however, the power to consolidate has been used sparingly because of the possibility of unfair treatment of creditors of one or more of the separate estates. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941); *Chemical Bank N. Y. Trust Co. v. Kheel*, 369 F.2d 845 (2d Cir. 1966).

In the Chapter 11 context consolidation with one or more persons is viewed as an example of a possible means for executing a plan of arrangement. 11 U.S.C. § 1123(a)(5)(C). In the present case the debtors propose to sell stock and other personal assets in order to help fund the plan.

The only creditor still objecting to the plan is Burke Investors. At the confirmation hearing no evidence was presented which would tend to show that Burke Investors could be prejudiced by the substantive consolidation. It appears to the court that substantive consolidation is in the best interests of creditors in this case because it eliminates the problems arising from the numerous cross-guarantees made by the individual debtors on corporate debts. Additionally, the sale of the individual debtors' personal property enhances the possibility that the debtors will be able to meet the payment scheme set forth in the plan.

*Confirmation of a Plan under 11 U.S.C. § 1129(b)*

Section 1129(b)(1) provides:

"Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

The ability to confirm a plan over the objection of creditors is commonly known as "cram down." Without "cram down" it is questionable whether many plans would be confirmed where there are disputes between creditors and the debtor. The presence of the "cram down" provision actually facilitates settlements in many cases, while at the same time allows for confirmation where a settlement cannot be reached. Having already determined that the plan meets the applicable requirements of 11 U.S.C. § 1129(a) and that the plan does not discriminate unfairly, the court must only determine whether the plan is fair and equitable.

Section 1129(b)(2)(B) provides that with respect to a class of unsecured claims the plan is fair and equitable if "the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim ..."

Burke Investors claims that the plan is not fair and equitable in two respects. Initially it is submitted that even though Burke Investors is to be paid 100% of his

claim, plus interest, the plan violates the "best interests of creditors" test found in 11 U.S.C. § 1129(a)(7)(A)(ii). Secondly, it is argued that the interest rate provided under the plan does not allow such class to receive on the effective date of the plan, a value equal to the amount of such claim.

Burke Investors does not claim that they would receive more than a 100-percent payment in a liquidation. However, they claim that payment in full over a period of time is not equivalent to receiving full payment now because of the current tax liabilities they will be required to pay as a result of their claim. Prior to the filing of the bankruptcy herein, Burke Investors attempted to effectuate a tax-free exchange through the use of funds obtained from the sale of a prior investment and a sale and lease back of the Nite Lite Inns San Diego. In *Burke Investors v. Nite Lite Inns*, 13 B.R. 900 (Bkrtcy.S.D.Cal.1981), the court determined that the transaction was not a bona fide sale and lease back, but instead was merely an unsecured loan. Hence, the tax-free exchange also fell through. Burke Investors is now saddled with a current tax liability and is apparently without the financial ability to pay it. If the debtors were to liquidate, it is argued that Burke Investors will be able to meet their tax liability.

█ While it is true that if the plan is confirmed Burke Investors may have a significant tax problem, the provisions of 11 U.S.C. § 1129 do not require the court to look beyond a determination as to whether a creditor is to receive under the plan the value of his claim as of the effective date of the reorganization. The unfulfilled hopes of this financial transaction need not be satisfied in order to meet this test. By requiring no more, the Bankruptcy Code attempts to achieve a balance between the due-process rights of creditors and the needs of a society bent on rehabilitating debtors. It is doubtful whether any ordered system of bankruptcy would be operable under the level of scrutiny urged by Burke Investors.

Section 1129(b)(2)(B) does not require that a creditor's claim be paid in full on the effective date of the plan. The section contemplates a present-value analysis that will discount value to be received in the future; "if the interest rate paid is equivalent to the discount rate used, the present value and face future value will be identical." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 412 (1977), U.S.Code Cong. & Admin.News 1978, p. 6370. *See also In re Benford*, 14 B.R. 157 (Bkrtcy.W.D.Ky.1981) (present market rate must be used to be responsive to current economic conditions); *In re Klein*, 10 B.R. 657 (Bkrtcy.S.D.N.Y. 1981) (a 12-percent interest rate was arrived at by averaging the legal rate and contract rate); *In re Hyden*, 10 B.R. 21 (Bkrtcy.S.D.Ohio 1980) (averaged contract and legal rate to reach appropriate discount value); *In re Landmark Plaza*, 7 B.R. 653 (Bkrtcy.D.N.J.1980) (15-percent interest was appropriate); *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980) (Internal Revenue Rate of 26 U.S.C. § 6621 is appropriate); *In re Miller*, 4 B.R. 392 (Bkrtcy.S.D.Cal.1980) (arrived at 12 percent under special circumstances of case); *In re Williams*, 3 B.R. 728 (Bkrtcy.N.D.Ill.1980).

The pivotal question in virtually all cases resorting to "cram down" is what interest rate, or discount factor, is appropriate to bring the plan in compliance with 11 U.S.C. § 1129(b)(2)(B)(i). The majority of cases on the subject are decisions rendered in the Chapter 13 context; however, the relevant considerations are substantially similar to those in Chapter 11 cases. *Compare* 11 U.S.C. § 1129(b)(2)(B)(i) and 11 U.S.C. § 1325(a)(4), (5)(B)(ii). As might be expected, the courts have fashioned a myriad of rules to arrive at an appropriate discount rate under the particular circumstances of each case.

The debtors, after analyzing case law and economic theory, proposed that the unsecured creditors receive interest at a rate equal to the current rate utilized by the Internal Revenue Service on tax obligations owed to it. 26 U.S.C. § 6621. The IRC rate is the average predominant prime rate quoted by commercial banks to large businesses, adjusted annually in September and

effective on January 1 of the immediately succeeding year. 26 U.S.C. § 6621(b)(c). The first case to propose the use of the IRC rate in the bankruptcy context was *In re Ziegler, supra; accord In re Crotty*, 11 B.R. 507 (Bkrtcy.N.D.Tex.1981); *In re Van Nort*, 9 B.R. 218 (Bkrtcy.E.D.Mich.1981); *In re Johnson*, 8 B.R. 503 (Bkrtcy.S.D.Tex.1981).

In *Ziegler*, the court characterized the use of the IRC rate as the "simplest method" which is reasonably responsive to current economic conditions, subject to periodic revision and yet not an unfair burden on the debtor. Burke Investors refutes the debtors' contention, on the basis that the prime rate in no way reflects the discount factor which should be utilized in bankruptcy cases. They claim that in order to achieve present value, the creditor should receive a note in an amount which would allow the creditor to walk across the street to the bank and sell the note for the face value of their claim. In this regard Howard Burke testified that a bank would discount his note arising out of the reorganization 40 to 50 percent.

■ After careful analysis of legal discourse on the subject this court finds that the rate utilized by the Internal Revenue Code is appropriate for cram-down purposes in a Chapter 11 case. Absent a showing that the current rate under 26 U.S.C. § 6621 is not indicative of then-existing economic conditions, such rate should be accepted as prima facie evidence of the appropriate discount factor to be used to cram down a Chapter 11 plan on an unsecured creditor. In the present case the showing that the appropriate discount rate should be 40 to 50 percent is unrealistic in light of current loan practice and the purposes of reorganization under the Bankruptcy Code. The adoption of such a rate would impose an artificial and unrealistic burden on any debtor seeking to reorganize.

*Conclusion*

In any bankruptcy case there are seldom any winners, just survivors. This case is no exception to the general rule. The debtors and several of their creditors have engaged in combat for the past two years. The climate of compromise which has recently prevailed in these proceedings has produced a plan which complies with the provisions of 11 U.S.C. § 1129. All classes have accepted the plan except Class 8. Upon the request of the debtors the court finds that the plan may be confirmed over the dissent of Class 8. The plan will therefore be confirmed.

The motion of Burke Investors to prohibit the use of some $300,000 on deposit pending a determination as to their right to such sums is granted.

Pursuant to Bankruptcy Rule 752, this opinion shall constitute findings of fact and conclusions of law. Counsel for the debtors shall file an appropriate order in conformance herewith within 10 days hereof.