**In re TACOMA RECYCLING, INC., a corporation, d/b/a Tacoma Recycling Center, New Age Recycling Center, and Lewiston Recycling Center, Debtor.**

**Bankruptcy No. 81–0024II.**

United States Bankruptcy Court,
W. D. Washington.

Sept. 15, 1982.

---

Mark J. Anderson, Tacoma, Wash., for debtor.

William H. Rubidge, Asst. U. S. Atty., Tacoma, Wash., for United States of America.

## DECISION ON OBJECTION TO CONFIRMATION OF PLAN

ROBERT W. SKIDMORE, Bankruptcy Judge.

This matter came on regularly for consideration upon the United States of America's Objection to Confirmation of debtor's Chapter 11 Plan for Reorganization. William H. Rubidge, Assistant United States Attorney, appeared on behalf of the United States and Mark J. Anderson appeared on behalf of the debtor corporation.

The Government had three specific objections to the Plan: (1) failure of the Plan of Reorganization to provide for deferred cash payments of Federal tax claims within six years of the date of assessment as required in 11 U.S.C. § 1129(a)(9)(C); (2) inadequacy of the debtor's proposed 10% interest rate to equal the present value of the Federal tax claims upon confirmation, 11 U.S.C. § 1129(a)(9)(C); and (3) failure of the debtor to file employment tax returns for the calendar year 1981 and first quarter of 1982 and arrearage of payment of post-petition taxes of approximately $25,000.00.

The debtor filed a Response to Objection to Confirmation of Chapter 11 Plan which resolves objections one and three noted above. Therefore, the only issue to be resolved on the Government's objection is what interest rate or discount rate will provide the Government the present value of its claim, upon confirmation of the plan pursuant to 11 U.S.C. § 1129(a)(9)(C).

It is the Government's position that the appropriate interest rate to provide the present value of Federal tax claims is the rate set in 26 U.S.C. § 6621. This is the general rate of interest imposed by the Internal Revenue Code for all taxes "... not paid on or before the last day prescribed for payment..." 26 U.S.C. § 6621. The Secretary of the Treasury is required to establish an adjusted interest rate based on the adjusted prime rate charged by banks during September of that year, to be effective February 1 of the succeeding year. 26 U.S.C. § 6621(b). "Adjusted prime rate charged by banks" is defined as the "... average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System." 26 U.S.C. § 6621(c).

Under the formula set forth in 26 U.S.C. § 6621, the adjusted rate of interest, effective February 1, 1982, was 20% per annum. Rev.Rul. 81–260, I.R.B. 1981—44, p. 19.

In its responsive memorandum the debtors urge that if the court finds that the proposed 10% interest rate is not appropriate, the court should set the interest rate at 12% to 14% per annum and should not set a rate higher than the 52-week Treasury Bill rate.

The issue of what amounts to an appropriate interest rate to determine present value of Federal tax claims has arisen more frequently in Chapter 13 cases under 11 U.S.C. § 1325(a)(5)(B)(ii), than under 11 U.S.C. § 1129(a)(9)(C). See: *In Re Smith,* 4 B.R. 12 (Bkrtcy.Ed.N.Y.1980); *In Re Crockett,* 3 B.R. 365, (Bkrtcy.N.D.Ill.1980); *In Re Miller,* 4 B.R. 392 (Bkrtcy.S.D. CA 1980); *In Re Jones,* 5 B.R. 736 (Bkrtcy.E.D.Vir.1980); *In Re Rogers,* 6 B.R. 472 (Bkrtcy.S.C.Iowa 1980); *In Re Willis,* 6 B.R. 555 (Bkrtcy.N.E. Ill.1980); *In Re Landmark Plaza,* 7 B.R. 653

(Bkrtcy.D.N.J.1980); *In Re Kibler,* 8 B.R. 957 (Bkrtcy.D.Ha.1981); *In Re Hyden,* 10 B.R. 21 (Bkrtcy.S.D.Ohio 1980); *In Re Clements,* 11 B.R. 38 (Bkrtcy.N.D.Ga.1981); *In Re Cooper,* 11 B.R. 391 (Bkrtcy.N.D.Ga. 1981); *In Re Marx,* 11 B.R. 819 (Bkrtcy.S.D. Ohio 1981); *In Re Miller,* 13 B.R. 110 (Bkrtcy.S.D.Ohio 1981); *In Re Benford,* 14 B.R. 157 (Bkrtcy.W.D.Ky.1981); *In Re Hibbert,* 14 B.R. 891 (Bkrtcy.E.D. Ny 1981); *In Re France,* 15 B.R. 711 (Bkrtcy.W.D.Mo. 1981); *In Re Kauffunger,* 16 B.R. 666 (Bkrtcy.D.N.J.1981).

The interest rate computed under 26 U.S.C. § 6621 was adopted by the Bankruptcy Court in *In Re Nite Lite Inns,* 17 B.R. 367 (Bkrtcy.1982), in the context of an 11 U.S.C. § 1129(b)(2)(B) "cram down" hearing. The debtor corporation had prepared its fourth amended plan of reorganization which provided for a 100% payout, plus interest over 36 months. Numerous objections were filed, and all had been compromised except the Class 8 creditor— Burke Investors. Originally Class 8 was to receive post confirmation interest at a 10% rate per annum while Class 9 unsecured creditors were to receive interest at the higher rate in effect pursuant to 26 U.S.C. § 6621. Later the plan was amended to allow Class 8's claim to bear interest at the rate formulated by 26 U.S.C. § 6621. Burke Investors maintained its objection to the proposed rate pursuant to 26 U.S.C. § 6621, as not allowing it to receive value equal to the amount of the claim on the effective date of the Plan.

The court recognized the competing policy interests that must be weighed in arriving at an interest rate that provides the creditors with present value of their claims. ... The Bankruptcy Code attempts to achieve a balance between the due-process rights of a society bent on rehabilitating debtors. . . . Section 1129(b)(2)(B) does not require that a creditor's claim be paid in full on the effective date of the plan. The section contemplates a present-value analysis that will discount value to be received in the future; "if the interest rate paid is equivalent to the discount rate use, the present value and face value will be identical." [quoting H.R.Rep. No. 95-595, 95th Cong., Sess. 412 (1977), U.S.Code Cong. & Adm.News 1978, p. 6370] *In Re Nite Lite Inns, supra;* p. 372.

The court then chose to utilize the rate established by 26 U.S.C. § 6621 because it adequately reflected market conditions at the time of the decision, February 4, 1982.

After careful analysis of legal discourse on the subject this court finds that the rate utilized by the Internal Revenue Code is appropriate for cram-down purposes in a Chapter 11 case. *Absent a showing that the current rate under 26 U.S.C. § 6621 is not indicative of then-existing economic conditions, such rate should be accepted as prima facie evidence of the appropriate discount factor to be used to cram down a Chapter 11 plan on an unsecured creditor.* In the present case the showing that the appropriate discount rate should be 40 to 50 percent is unrealistic in light of the current loan practice and the purposes of reorganization under the Bankruptcy Code. The adoption of such a rate would impose an artificial and unrealistic burden on any debtor seeking to reorganization. *In Re Nite Lite Inns, supra,* p. 373 (emphasis added).

The present rate imposed by 26 U.S.C. § 6621 is 20% per annum. According to the statutory formula, it was set based on the adjusted prime rate prevailing in the month of September, 1981, to be effective from February 1, 1982 through December 31, 1982. This rate, along with debtor's proposed rate, must be compared to the current money market to determine if either proposed rate is responsive to current economic conditions prevailing on or about the date of confirmation.

The best compilation of average prime rate figures for short-term business loans appears in the Federal Reserve Bulletin, which is published by the Federal Reserve Board on a monthly basis. The average monthly prime rate for the calendar year 1981 and the first six months of 1982, as per

figures supplied in the Federal Reserve Bulletin, appear on Graph No. 1 which is attached hereto and incorporated herein by reference.

The most current figures for the prime rate for the month of August, 1982, are contained in the daily money rates published in the Wall Street Journal. A graph of the rate of prime rate quotations from the Wall Street Journal appear in Graph No. 2 which is attached hereto and incorporated herein by reference.

Given the average prime rate levels over the last 18 months, it is apparent that neither the rate fixed under 26 U.S.C. § 6621 nor the debtor's proposed rate are indicative of current economic conditions. The rate under 26 U.S.C. § 6621 arbitrarily set a mark of 20% interest, based on the highest prime rates of the 18 month period. This created an artificial rate, which was static during a period when there was significant fluctuation in the average prime rate. Given the most current prime rate trends, it is possible that the converse could occur with use of the 26 U.S.C. § 6621 rate for 1983—a rate that is far below average prime rate figures for the actual period.

The debtor's original proposal could be equally ineffective. The original proposal of 10% per annum—the old judgment rate of interest—is equally static and not indicative of current economic conditions.

A better formula which will provide the Bankruptcy Court with a discount rate that is more closely tied to current economic conditions at the time of confirmation of a Chapter 11 Plan of Reorganization, is the rate set according to 28 U.S.C. § 1961, (a), section 302(a) of the Federal Courts Improvement Act of 1982, effective October 2, 1982, for interest on judgments in Federal Court. The statutory rate is described as follows:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges. 28 U.S.C. § 1961(a), P.L. 97–164, Sec. 302(a), (April 2, 1982).

Under the statute the rate will change thirteen times a year, since 52 week Treasury bills are auctioned every four weeks. The rate was arrived at after consideration of the rate set under 26 U.S.C. § 6621.

Initially, language in the various bills would have adopted for all cases the rate set for tax cases under 26 U.S.C. § 6621. This rate is currently 20% due to the very high interest rates in 1981 and will not be readjusted until February, 1983. The Office of Management and Budget pointed out the high costs to the United States that this rate would cause and noted that *it does not change sufficiently often to reflect market conditions.* "Memorandum to all United States Judges, [re:] Post Judgment Interest," June 22, 1982, p. 1 (emphasis added).

The court finds that the formula set forth in 28 U.S.C. § 1961(a) as amended may be utilized as an interest rate to provide the Government with present value of Federal tax claims under 11 U.S.C. § 1129(a)(9)(C). This rate can be computed easily and, due to its frequent adjustment, is indicative of "... existing economic conditions ... *In Re Nite Lite Inns, supra,* p. 373."

Therefore, it is ORDERED, ADJUDGED AND DECREED that the rate set forth in 28 U.S.C. § 1961(a) as amended shall be applied on the date of confirmation of the Plan of Reorganization in the same manner that it is applied to judgments.

APPENDIX

TACOMA RECYCLING, INC. NO. 81–00241T

DECISION ON OBJECTION
TO CONFIRMATION OF PLAN

GRAPH NO. 1

Prime Rate Charged by Banks of Short-Term Business Loans, compiled from Federal Reserve Bulletin, Volumes: 67, No. 12 (Dec. 1981);  68 No. 1 (January, 1982);  68 No. 7 (July, 1982).

TACOMA RECYCLING, INC. NO. 81–00241T          DECISION ON OBJECTION
                                              TO CONFIRMATION OF PLAN

GRAPH NO. 2

Prime Rate Money Rates, as listed in The Wall Street Journal for dates of July 1, 1982 and August, 1982.