**In re LANDMARK CAPITAL COMPANY, Debtor.**

**NORTH CENTRAL DEVELOPMENT COMPANY, Plaintiff,**

**v.**

**LANDMARK CAPITAL COMPANY, Defendant.**

**Bankruptcy No. B–82–1243–PHX–RGM.**

**Adv. No. 82–697 RGM.**

United States Bankruptcy Court, D. Arizona.

Jan. 17, 1983.

Frederick K. Steiner, Phoenix, Ariz., Robert J. Rosenberg, New York City, for plaintiff.

Edward E. Davis, Phoenix, Ariz., Michael Cook, New York City, for defendant.

AMENDED OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF THE LACK OF A GOOD FAITH FILING

### INTRODUCTION

ROBERT G. MOOREMAN, Bankruptcy Judge.

The matter presently before this court involves dispositive cross motions for summary judgment in Adversary 82–697 and

approval of the Modified Plan filed by the debtor. The issues before the court in the context of the case are framed by the history of the Chapter 11 proceedings which follows.

## HISTORY AND PRIOR PROCEEDINGS

The debtor, Landmark Capital Company, a New York General Partnership ("Landmark") whose partners are N. Richard Kalikow, and Eli Waserstein, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, on January 8, 1982, in the United States Bankruptcy Court for the Southern District of New York. On February 8, 1982, Landmark filed its schedules, and amended them on June 9, 1982 and on December 17, 1982, and Landmark continues to operate as debtor-in-possession since the filing of the petition.

Landmark owns a fifteen acre office and hotel complex (the "Rosenzweig Center") in Phoenix, Arizona, which it purchased in October 1980 from North Central for $54.3 million.[1] North Central is an Arizona partnership whose partners are Del E. Webb Corporation, Harry Rosenzweig and Newton Rosenzweig. In September 1981, Landmark commenced a fraud action in the United States District Court for the District of Arizona against North Central seeking rescission of the sale or damages. Landmark thereafter failed to make payment on promissory notes held by North Central. North Central subsequently stated its intention to foreclose a deed of trust it held in the Rosenzweig Center by non-judicial foreclosure sale. Landmark applied to the District Court for the District of Arizona for injunctive relief against North Central's proposed sale of the Rosenzweig Center. On January 7, 1982, Judge Hardy of the District Court of Arizona denied the application for injunction.[2] On the following day, January 8, Landmark filed a petition under Chapter 11 in the Bankruptcy Court for the Southern District of New York. The filing of the Chapter 11 petition effectively stayed the foreclosure proceedings. See 11 U.S.C. § 362.

Landmark's Chapter 11 and the record of all prior proceedings is before the Arizona Court now as a result of the granting of a motion for transfer filed January 18, 1982, by North Central before Bankruptcy Judge Babitt of New York. In an opinion dated April 7, 1982, Judge Babitt found that venue of Landmark's reorganization petition in the Southern District of New York was proper pursuant to 28 U.S.C. § 1472, but granted North Central's motion to transfer, pursuant to 28 U.S.C. § 1475. See: *In the Matter of Landmark Capital Company,* 19 B.R. 342, 8 B.C.D. 1160, Bankr.L.Rep. ¶ 68762, 6 Collier Bankr.Cas.2d 447 (Bkrtcy. S.D.N.Y.1982). On April 9, 1982, Judge Babitt entered a written order transferring the case to the District of Arizona. Later, on April 9, 1982, Judge Babitt issued an Order to Show Cause temporarily staying the transfer and setting a hearing on the stay. On April 14, Landmark filed a Notice of Appeal. On April 16, Judge Babitt held a hearing on the April 9 Order to Show Cause. Following the hearing, Judge Babitt, ruling from the bench, denied the application for a stay of transfer. Landmark proceeded to the District Court, Southern District of New York, on the same date

---

1. The property is subject to the following liens as scheduled as of date of filing by Landmark:

| | |
|---|---|
| Prudential Insurance Co. of America | $ 7,071,444.69 |
| Massachusetts Mutual Life Ins. Co. | 6,768.725.68 |
| | 683,614.12 |
| | 90,506.21 |
| North Central Development Co. | 29,043.457.97 |
| (Interest) | 2,444,627.52 |
| Chase Manhattan Bank N.A. | 5,500,000.00 |

2. Landmark appealed Judge Hardy's decision to the Ninth Circuit Court of Appeals. *Landmark Capital Co., et al. v. North Central Development Co., et al.,* D.C. No. 81–1167–CLH

(D.Az.Jan. 7, 1982), *aff'd* 696 F.2d 1003 (9th Cir. 1982). The Ninth Circuit affirmed Judge Hardy's denial of a preliminary injunction, the Court of Appeals stating that Landmark's preference for "recoupment" over rescission is not sufficient to tip the hardship scale under the law of equity injunction, and had failed to show Landmark's requisite likelihood of success on the merits, nor could it demonstrate sufficient equity entitlement, and also that it had adequate standard techniques under the law of Arizona without resort to extraordinary relief.

seeking a stay pending appeal. The District Court directed counsel for Landmark to serve papers in support of their application on April 21, and set down a hearing for April 22. The court also issued an order on April 16, deeming the Notice of Appeal filed by Landmark with the Bankruptcy Court on April 14, to be a timely application for leave to appeal the Bankruptcy Court order. A hearing on Landmark's application before the District Court was held on April 22, 1982. In an Opinion and Order dated April 30, 1982, District Judge Edelstein affirmed Bankruptcy Judge Babitt's order, holding that (1) the order transferring venue was appealable to the District Court, and (2) even though venue was proper in the Southern District of New York, transfer was proper based on proximity of creditors, proximity of the debtor to the court, location of witnesses and assets and the economic and efficient administration of the case. *In re Landmark Capital Company,* 20 B.R. 220, Bankr.L.Rep. ¶ 68689, 6 Collier Bankr.Cas.2d 455 (D.C.S.D.N.Y. 1982).

## THE PLAN AND DISCLOSURE STATEMENT PHASE OF THE PROCEEDINGS PENDING HEREIN AND PERTINENT ARGUMENTS

On May 17, 1982, the case was actually transferred from New York and assigned to the District of Arizona Bankruptcy Court. Landmark filed its Plan of reorganization in the Arizona Court on June 1, 1982, after having received an extension of one week. Landmark filed its Disclosure Statement on June 7, 1982, and on June 8, 1982, an Order to Show Cause was filed which, *inter alia,* set the filing and hearing dates for objections to the Disclosure Statement and for voting, and specified the parties upon whom notice should be given regarding the confirmation hearing. On July 28, 1982, North Central filed its objections to the Disclosure Statement and Plan of Reorganization, alleging:

1) The plan, on its face, is patently unfair to it, Landmark's largest secured creditor;

2) The Disclosure Statement fails to meet the general requirements under 11 U.S.C. § 1125(b) in that it is extremely subjective and contains argumentative, inflammatory, and inappropriate comments.

3) The Disclosure Statement and Plan failed the requirements of 11 U.S.C. § 1129(a)(5)(A)(i) (failure to disclose identity of post-confirmation officers), § 1129(a)(5)(B) (failure to disclose identity of post-confirmation employment of insiders), and § 1129(a)(11) (failure to disclose how confirmation will not likely be followed by liquidation).

In sum, North Central rejected the plan and labeled it as being discriminatory, unfair, inequitable and not proposed in good faith.

Landmark responded on August 2, 1982, stating that its proposed Disclosure Statement meets the requirements of 11 U.S.C. § 1125 by providing sufficient information for a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. Landmark countered North Central's objections as being without foundation and irrelevant.

At the August 2, 1982, continued hearing on the Disclosure Statement, the court approved the Disclosure Statement as modified, and entered its order of approval on August 13, 1982. The August 10, 1982, confirmation hearing was continued pursuant to stipulation of the parties, and the court fixed new filing and hearing dates. Landmark then filed its motion for extension of time to solicit acceptances and for another continuance of the confirmation hearing. North Central objected, accusing Landmark of delay tactics and emphasized that the Landmark debt to North Central of $29,043,457.97 accrues interest at the rate of $15,082.11 per day. The matter was heard on September 1, 1982, and the court again revised the filing and hearing dates for both plan confirmation and for the resolution of the pending motions for summary judgment.

## THE ORIGINAL PLAN AND OBJECTIONS

North Central, designated as a Class 3 claimant,[3] filed an objection to the confirmation of the plan based upon noncompliance with several subsections of 11 U.S.C. § 1129, placing major emphasis on 11 U.S.C. § 1129(a)(3). North Central charges that Landmark's plan is not proposed in good faith in that:

1. The purpose of the filing is to frustrate the enforcement of the power of sale provision under North Central's deed of trust and to circumvent Judge Hardy's order of January 7, 1982, denying a stay in the District Court lawsuit;

2. The prosecution by Landmark of the suit in District Court is inconsistent with Landmark's purported rehabilitation of the Rosenzweig Center, the apparent goal of the plan;

3. The plan impairs no one but North Central;

4. North Central is the only creditor of Landmark which is not being paid on a current basis;

5. Landmark has paid creditors with prepetition claims during the course of its Chapter 11;

6. There is no need for reorganization, just the desire to rid itself of its obligation to North Central, now claimed to be in excess of $37 million (principal of $29,043,457.97 with interest accruing at $15,082.11 per day).

Landmark generally denied North Central's objection on September 13, 1982, and offered affirmative defenses. A hearing was held on September 28, 1982, at which time the court heard argument on the confirmation of the plan as well as argument on the pending motions for summary judgment.

## THE MODIFIED PLAN AND OBJECTIONS

Landmark presented its Modified Plan of Reorganization and Second Amended Disclosure Statement in open court at the September 28, 1982 confirmation hearing, together with a supporting memorandum. North Central objected, raising the same objections as in its earlier objections to the original plan adding that it was more burdensome. In support of the objection, North Central claims that the Modified Plan:

1. Proposes to substitute North Central's contractual right to immediate payment in excess of $33 million with deferred cash payments in arbitrary amounts over a potential 14 year payoff period, at 10.14%, some eight points lower than the note and contract price of 18%, all totalling less than the present value of North Central's claim;

---

**3.** Pursuant to Landmark's Disclosure Statement and Reorganization Plan, North Central is a member of Class 3. Under the terms of the plan, Class 3 claimants are provided for as follows:

ARTICLE IV. PROVISIONS FOR CLAIMS

\* \* \* \* \* \*

C. *Class 3 Claims:* No holder of a filed (whether actually filed or deemed filed under 11 U.S.C. § 1111(a)) Class 3 Claim shall receive payment from Landmark on the Confirmation Date until and unless the District Court for the District of Arizona has determined, by a judgment that is final and no longer subject to review, prior to the Confirmation Date, that in the action entitled *Landmark Capital Company, et al. v. North Central Development Company, et al.,* Civ. 81–1167 PHX CLH (the "Fraud Suit"), Landmark is liable to a holder of a Class 3 Claim for any sum. In that event,

(i) the holder of a Class 3 Claim shall retain its asserted lien on Landmark's Arizona property to the extent of securing such liability;

(ii) Landmark shall pay to the holder of a Class 3 Claim the sum allowed by the District Court, in 80 equal installments, on a quarter-yearly basis for a period of 20 years, such that the total sum of the payments is equivalent to the present value of the holder of a Class 3 Claim's interest in Landmark's Arizona property. For purposes of this paragraph, the present value of a Class 3 Claim's interest in Landmark's Arizona property shall be determined as of the Confirmation Date.

In the event that, subsequent to the Confirmation Date, the District Court for the District of Arizona' in the Fraud Suit, finds Landmark liable to a holder of a Class 3 Claim for any sum in a judgment that is final and no longer subject to review, then Section C.(i)–(ii) of this Article shall become applicable and effective ten (10) days after entry of such judgment.

2. It is not in the best interests of creditors because North Central would receive substantially less under the Modified Plan as of the confirmation date than under a Chapter 7 liquidation, all in violation of 11 U.S.C. § 1129(a)(7);

3. The modified plan cannot succeed due to Landmark's inadequate cash flow, in violation of 11 U.S.C. § 1129(a)(11).

North Central also claims the Modified Plan cannot be "crammed down" pursuant to 11 U.S.C. § 1129(b) as it deprives North Central of its "bundle of rights," by providing a legally inadequate rate of interest, violates the absolute priority rule, and contains provisions contrary to basic principles of equity, which, when summed up, do not meet the "fair and equitable test."

Again, Landmark responded to the North Central objection, addressing each point raised and countering that:

1. The Modified Plan is feasible;

2. The deferred cash payments are self-liquidating and not "risky;"

3. The Modified Plan was filed in good faith, which is evidenced by the major substantive changes in the Modified Plan for the benefit of North Central.[4]

Landmark denies its Modified Plan offends the absolute priorities rule, stating that the Landmark partners will not receive interest or principal payments until all other claims have been duly paid. It further urges that the interest rate of 10.14% is in line with prevailing interest rates for purchase money mortgages.

A confirmation hearing on the Modified Plan was held on October 5, 1982, and hearing was duly continued to October 13, 1982. At that time, the court heard testimony and admitted evidence regarding plan confirmation issues. The parties have filed post confirmation hearing briefs and advices to the court regarding nonpayment of real property taxes and the Ninth Circuit's disposition of District Court Judge Hardy's order.

On the Modified Plan issues and in light of the decision following in the pending adversary 82–697, granting the motion for summary judgment filed by North Central, it is unnecessary for this court to rule on Landmark's Modified Plan. However, the court notes that had it become necessary to pass upon the Modified Plan, the 10.14% rate over a potential 14 year period (as opposed to the contractual terms of 18%) would have been inadequate under the principles set forth in the case of *In re Nite Lite Inns*, 17 B.R. 367, 8 B.C.D. 936, Bankr.L. Rep. ¶ 68586, 6 Collier Bankr.Cas.2d 107 (Bkrtcy.S.D.Calif.1982). The question of the need and adequacy of a discount factor arose and the court therein concluded:

Section 1129(b)(2)(B) does not require that a creditor's claim be paid in full on the effective date of the plan. The section contemplates a present-value analysis that will discount value to be received in the future; "if the interest rate paid is equivalent to the discount rate used, the present value and face future value will be identical." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 412 (1977), U.S.Code Cong. & Admin.News 1978, p. 6370. *Nite Lite, supra* at 372.

---

**4.** The Modified Plan calls for post-confirmation loans made by the Landmark partners and Ramada Hotel Operating Company, totalling approximately $6 million for hotel repair and renovation. All insider claims, interests and post-confirmation loans are to be subordinated. Under the Modified Plan, Class 3 Claimant North Central would receive the following summarized treatment:

A. North Central retains lien, and receives consecutive quarterly installments of $1.45 million ($5.8 million per year), up to $40 million, over 12 years (or less), at 10.14% simple interest;

B. So long as partners and Ramada make hotel renovation loan described above, payments start 2 years from confirmation;

C. Pending disposition of fraud suit, payments to be deposited in interest-bearing account, subject to bankruptcy court jurisdiction;

D. Court retains jurisdiction to enforce terms of plan;

E. North Central gets all funds deposited if successful in fraud suit, to extent its claim may be allowed. Otherwise, funds go back to Landmark.

After an analysis of case law and economic theory, the *Nite Lite* court concluded that the current rate utilized by the Internal Revenue Service on tax obligations pursuant to 26 U.S.C. § 6621 was appropriate for cram-down purposes in Chapter 11 cases, reasoning that the IRC rate "is the average predominant prime rate quoted by commercial banks to large businesses, adjusted annually in September and effective on January 1 of the immediately succeeding year" and finding that "absent a showing that the current rate under 26 U.S.C. § 6621 is not indicative of then-existing economic conditions, such rate should be accepted as prima facie evidence of the appropriate discount factor to be used to cram down a chapter 11 plan on an unsecured creditor." *Nite Lite, supra,* at 373. This court, in resolving the Modified Plan controversy, would adopt the reasoning and result of the *Nite Lite* court, and notes that, unlike the unsecured creditor in *Nite Lite,* North Central is Landmark's largest secured creditor with a fixed contractual rate of 18% that should not be ignored.[5]

## NORTH CENTRAL ADVERSARY COMPLAINT 82–694 AND PENDING MOTIONS FOR SUMMARY JUDGMENT

On June 3, 1982, North Central filed its adversary complaint No. 82–697, requesting:

1. Relief from the automatic stay against lien enforcement pursuant to 11 U.S.C. § 362(d)(1) for *cause;* or in the alternative,

2. Dismissal of Landmark's petition; a) for cause, pursuant to 11 U.S.C. § 1112(b) pursuant to the court's inherent equitable power to protect its jurisdiction from abuse, or 3) in the interests of the creditors, debtor and justice pursuant to 11 U.S.C. § 305.

In support, North Central sets forth essentially the same arguments offered in its several objections to Landmark's disclosure statements and reorganization plans.

Landmark answered on July 26, 1982, and generally denied North Central's complaint, offered affirmative defenses, and claimed that it is, and has been, entitled to reorganization relief.

Landmark filed its Motion for Summary Judgment on July 30, 1982. A preliminary hearing was held on August 10, 1982, and North Central filed its Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment on August 25, 1982. At the September 1, 1982, hearing, Landmark was directed to respond to North Central's Motion for Summary Judgment by September 15, 1982. At the continued hearing on the cross-motions on September 28, 1982, the court heard argument and took the matter under advisement.

This court finds the following facts are supported by the record herein before the court and are not disputed by the parties:

1. On or about October 31, 1980, North Central entered into a Purchase and Sales Agreement (the "Agreement") with Landmark pursuant to which North Central agreed to sell to Landmark and Landmark agreed to purchase from North Central certain real property and the improvements thereon commonly known as the Rosenzweig Center.

2. The agreement provided for a total purchase price of $54,300,000 including the assumption of existing mortgages and liabilities in the aggregate amount of $16,256,542.03 and a cash down payment of $1,000,000. Landmark executed a promissory note ("Note") which was secured by a deed of trust for the remaining $37,043,457.97. The note was payable in full on or before February 27, 1981.

3. By letter agreement dated December 31, 1980, North Central extended the maturity date of the Note to October 1, 1981.

4. On September 30, 1981, one day before payment was due on the Note, Landmark commenced an action in the United

---

**5.** During the litigation, the IRC rate was 20%, that is, from February of 1982 to December 31, 1982. The court is advised that commencing January 1, 1983, the rate became 16%, computed daily.

States District Court for the District of Arizona against North Central seeking rescission of the Agreement (hereafter "District Court Action").

5. The District Court Action was commenced for the purpose of staying the enforcement by North Central of the power of sale provision under North Central's deed of trust.

6. By "Notice of Trustee's Sale" dated October 14, 1981, the Rosenzweig Center was advertised for sale at public auction pursuant to the terms of the deed of trust.

7. On January 7, 1982, District Judge Hardy denied Landmark's motion for a preliminary injunction enjoining the scheduled sale of the Rosenzweig Center. Judge Hardy found that if Landmark succeeded in the District Court Action, it could recover whether or not the property were sold.

8. On January 8, 1982, five days before the scheduled sale of the Rosenzweig Center, Landmark filed a petition under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York.

9. Landmark filed its Chapter 11 petition to obtain a stay of the sale of the Rosenzweig Center.

10. North Central is the only secured creditor of Landmark which is affected by these proceedings and is not being paid on a current basis.

11. Landmark has paid its creditors with prepetition claims during the course of its Chapter 11 proceeding.

12. As of the date of filing, Landmark had paid all of its trade creditors and unsecured creditors, except its architect, its interior designer, its accountant, and possibly Gabriel Schwartz & Co.

## QUESTION OF GOOD FAITH FILING

The ultimate question before the court is, "Did Landmark act in good faith when it filed its Chapter 11 petition?" From the record herein, this court finds and concludes that there was not a good faith filing on January 8, 1982. It appears to the court that from the very beginning, the Landmark reorganization is an apparent two-party dispute which can be resolved outside of the Bankruptcy Court's jurisdiction and from this record, the sole purpose of the filing of the Chapter 11 proceeding appears to be to frustrate the enforcement by North Central of the power of the sale provision under North Central's deed of trust. North Central has been singled out and subjected to unfair and discriminatory treatment by the debtor. On this record and to find otherwise under these facts would be to cause North Central to bear the entire expense of Landmark's proposed "reorganization" herein.

Landmark filed its petition for relief on January 8, 1982, and filed the following schedules, *inter alia,* one month later, summarized below:

Schedule A–1 (Creditors Having Priority)

Landmark indicated taxes due for sales and property taxes, totalling $384,516.61

Schedule A–2 (Creditors Holding Security)

Four creditors listed:

| | |
|---|---|
| Prudential Insurance Co. of America | – $ 7,071,444.69 |
| Massachusetts Mutual | – 6,768,725.68 |
| | 683,614.12 |
| | 90,506.21 |
| North Central Development | – 29,043,457.97 |
| | 2,444,627.52 |
| Chase Manhattan Bank N.A. | – 5,500,000.00 |

Schedule A–3 (Creditors Having Unsecured Claims Without Priority) Lists Massachusetts Mutual Life Ins. Co. 696,928.78
and a notation to a Rider warning of the possibility of additional accrued expenses.

On June 9, 1982, Landmark filed an amendment to Schedules A–1 and A–3, adding three taxing authorities to Schedule A–1 and 74 unsecured creditors to Schedule A–3.

It is undisputed that Landmark Capital Co. had paid substantially all accounts which were owed by Landmark prior to January 8, 1982, except those payments due to North Central, and specifically all trade debt prior to January 8, 1982 has been paid. Landmark's controverting affidavits state that the prepetition payments were inadvertent and in all cases, unauthorized. Landmark further contends that any improper payments are voidable pursuant to 11 U.S.C. § 549. This position does not change the facts nor create disputed issues. However, North Central's affidavit of Thomas E. Arnold, Jr., states that, as President of Del E. Webb Realty and Management Co., he had discussed the day-to-day management affairs of the Rosenzweig Center with Mr. Richard Kalikow on many occasions, and that after the institution of the civil suit against North Central, he was instructed not to pay North Central. Additionally, Mr. Arnold did not receive any other instructions not to pay other debts and was instructed to conduct business as usual. These affidavits served as touchstones to much of the oral argument presented on September 28, 1982. At that time, Landmark claimed it had about $300,-000 of prepetition, unsecured debt as reflected on its amended schedules. It was conceded, however, that approximately $200,000—$250,000 of that amount had been paid via unauthorized payments by personnel managing the Rosenzweig Center. The record reflects Landmark could only name four prepetition, unsecured creditors that had not been paid—its architect, its interior designer, its accountant, and possibly Gabriel Schwartz & Co.[6] The schedules reflect:

| Edward Durrell Stone Assoc. | $15,049.22 |
| Donghia Associates, Inc. | 6,182.11 |
| Lubinsky & Gottesman | 300.00 |
| Gabriel Schwartz & Co. | 20,000.00 |

It appears, therefore, from this record, that except for three "creditors" whose exact status is unclear from the schedules, that the remaining 73 or so unsecured creditors holding prepetition debts listed on Landmark's schedules and amendment, had been paid, or satisfied, prior to the filing of the Chapter 11 proceedings. The court also notes that on January 20, 1982, Bankruptcy Judge Roy Babitt, of the Southern District of New York, entered an order pursuant to 11 U.S.C. § 363(c) authorizing Landmark's use of cash collateral (rents) to preserve its property and pay mortgagees. Specifically, section (d) of that order permits Landmark to "continue servicing the debtor's undisputed mortgagees. . . ." It appears, then, from facts presented during argument and the court record herein, that of Landmark's four secured creditors, of which North Central is one, all others continue to receive payments on a current basis—except North Central.

The point should be made here that this court does not, as a matter of law, condemn eve-of-foreclosure filing as absolute proof of lack of good faith. To the contrary, in ruling on the propriety of such filings, courts have held that invocation of the Bankruptcy Court's jurisdiction and the protection afforded by the automatic stay was not only proper but necessary to stave off foreclosing creditors long enough to effectuate a reorganization of a viable entity. *In re Beach Club,* 22 B.R. 597, 9 B.C.D. 573 (Bkrtcy.N.D.Calif.1982). Furthermore, when each of North Central's arguments are taken alone, they would not otherwise support a finding of bad faith which would result in dismissal pursuant to 11 U.S.C. § 305(a) or 11 U.S.C. § 1112(b). However, this court finds and concludes that each of

---

6. Landmark's December 17, 1982 amendment of its schedules to reflect a claim of Gabriel Schwartz & Co. came well after the hearings and briefing on these matters had been concluded, and while the matters were under advisement by the court. Although the court believes that this belatedly added claim, not having been subject to scrutiny or challenge, is entitled to little or no weight, the court's findings and conclusions herein would be unchanged if the added claim were given full weight.

North Central's allegations and the supporting proofs disclose to the court a two-party dispute only and therefore a lack of good faith in the filing herein and a consequent improper invocation of this court's jurisdiction under the circumstances presented. The Bankruptcy Courts that have dealt with this problem generally recognize that good faith is lacking when conduct is present "which is inconsistent with the underlying purposes and contemplation of the reorganization and rehabilitation process and constitutes a perversion of legislative intent." *In re Victory Construction Corp.,* 9 B.R. 549, 558 (Bkrtcy.C.D.Calif.1981). See also, *In re Victory Construction Corp.,* 9 B.R. 570 (Bkrtcy.C.D.Calif.1981) (involving stay of pending appeal.)

The requirement that a bankruptcy petition seeking reorganization be filed in good faith is rooted in the provisions of the Bankruptcy Act of 1898 which preceded the current Bankruptcy Code. Under the Bankruptcy Act, the courts did not hesitate to dismiss a reorganization proceeding or grant a creditor relief from the stay where it appeared that the court's jurisdiction was being abused or that the debtor was unduly taking advantage of the liberal provisions of the bankruptcy laws to harass its creditors.[7]

The court, therefore, having duly considered all pleadings, evidence, transcripts, supplemental memoranda and the applicable law on the facts before it orders as follows:

IT IS HEREBY ORDERED denying the Motion for Summary Judgment filed by Landmark Capital Co., and further

IT IS ORDERED granting the Cross-Motion for Summary Judgment filed by North Central Development Co.

### CONCLUSION

In granting the motion filed by North Central, the court is persuaded to follow the law from the court record that Landmark's Chapter 11 proceeding was primarily motivated to block foreclosure of North Central's deed of trust and to effectively rewrite the negotiated cash-to-mortgage agreement between the parties. Landmark is composed of knowledgeable, sophisticated real estate investors who negotiated a 10.7 million dollar reduction in the original offering price of $65 million prior to this dispute. When the District Court failed to stay foreclosure pending resolution of the civil suit, Landmark filed its Chapter 11 petition for reorganization in the Bankruptcy Court and obtained the protection of the automatic stay against lien enforcement provided by the Bankruptcy Code. It is clear to this court that Landmark did not seek the provisions of Title 11 and the jurisdiction of this court in a *bona fide* effort to reorganize its debt structure. To the contrary, at the time of filing, Landmark was substantially current with its general credi-

---

7. *Marine Harbor Properties v. Manufacturers Trust Co.,* 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942) (failure of debtor to demonstrate good faith in failing a Chapter X petition and that interest of creditors and stockholders would not be better served in nonbankruptcy proceedings warranted affirmance of Circuit Court dismissal of Chapter X); *Shapiro v. Wilgus,* 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355 (1932) (relief from stay granted where sole purpose in establishing new corporation and filing was "to prevent the disruption of the business at the suit of hostile creditors and to cause the assets to be nursed for the benefit of all concerned"); *In re U.S.A. Motel Corp.,* 450 F.2d 499 (9th Cir.1971) (failure of Chapter X debtor to demonstrate good faith, including the failure to demonstrate the possibility of a successful reorganization, held to be an invocation of court's power for a "purpose for which it may not be exercised," and petition dismissed.) *In re Metropolitan Realty Corp.,* 433 F.2d 676 (5th Cir.1970) (district court order dismissing Chapter X petition affirmed where bankrupt failed to show good faith and admitted that corporation was formed solely as medium through which individual debtor could obtain Chapter X relief); *Mongiello Brothers Co. v. Houghtaling Properties,* 309 F.2d 925 (5th Cir.1962) (relief from stay granted in Chapter X proceeding where sole purpose of reorganization was to avoid foreclosure); *In re Mallard Associates,* 463 F.Supp. 1259 (S.D.N.Y.1979)—(petition dismissed for bad faith where "debtor fraudulently invoked the jurisdiction of the bankruptcy court by creating, solely for the purpose of filing a Chapter XII proceeding, a limited partnership whose sole asset is a property about to be foreclosed upon").

tors and other creditors. Accordingly, this court further finds and concludes:

1. The sole purpose of commencing proceedings was to forestall and thwart North Central's exercise of its power of enforcement under its deed of trust;

2. There are not substantial unsecured creditors other than those obligations owed to Landmark's architect, interior designer, accountant, and possibly Gabriel Schwartz & Co;

3. This proceeding is in effect a two-party dispute between Landmark and North Central which should be settled outside of the jurisdiction of the Bankruptcy Court.

4. The conduct of Landmark's principals in utilizing the District Court action for the purpose of unilaterally securing delay in performance on the eve of the foreclosure sale, and Landmark's filing of this Chapter 11 proceeding only after District Judge Hardy had refused to enjoin the sale in the District Court action in order to obtain the automatic stay to delay only North Central, is inconsistent with the purpose, spirit and intent of the Bankruptcy Code, under the facts and circumstances of this case.

Therefore, IT IS ORDERED, ADJUDGED AND DECREED that Landmark's Chapter 11 proceedings is hereby subject to dismissal pursuant to 11 U.S.C. § 1112(b) upon the entry of a judgment thereof. On the issue of attorneys' fees, this court hereby awards North Central its reasonable attorneys' fees and costs incurred directly in litigating this adversary proceeding.

Pursuant to F.R.Civ.P. 52, as adopted by Rule 752 of the Rules of Bankruptcy Procedure, this opinion and order shall constitute findings of fact and conclusions of law herein. Counsel for North Central shall prepare and lodge a form of judgment consistent herewith pursuant to Rule 921.