**In re John MITCHELL, Clara A. Mitchell.**

**Bankruptcy No. 383–02325.**

United States Bankruptcy Court, D. Oregon.

March 12, 1984.

Herbert C. Sundby, Asst. U.S. Atty., Portland, Or., for I.R.S.

Edward J. Benett, Portland, Or., for debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

This matter came before the court on the objection by the Internal Revenue Service ("IRS") to confirmation of the debtors' chapter 13 plan. The IRS appeared through Assistant United States Attorney, Herbert C. Sundby. The debtors' attorney, Edward J. Benett, conferred with the trustee on the day of the confirmation hearing, August 25, 1983 but did not appear at the scheduled hearing because no objections had been filed with the court. The court sustained the objection of the IRS and en-

tered an order on September 6, 1983 denying confirmation due to the plan's failure to provide for a secured claim. The debtors' motion for reconsideration of the order denying confirmation of the plan was considered at an adjourned confirmation hearing which was held on October 13, 1983, with both attorneys in attendance. The debtors filed a memorandum at this hearing and the IRS was granted time to file a response to the memorandum. Earlier the IRS had presented a brief memorandum stating its position in its response to the debtors' motion for reconsideration. Although it has been four and one half months since the debtors' memorandum was filed, the IRS has failed to file a memorandum.

The IRS contends that the debtors' chapter 13 plan does not provide for the appropriate interest rate on a secured tax claim as required under 11 U.S.C. § 1325(a)(5)(B). The debtors' memorandum raises the following issues concerning the IRS claim:

(1) Whether the proof of claim filed by the IRS is accurate;

(2) Whether the IRS tax lien, if properly filed, must be characterized as an unsecured claim because it is a statutory lien rather than a security interest;

(3) Whether the IRS claim, if unsecured, is based upon taxes which are more than three years old and thus not entitled to priority under 11 USC § 507(A)(6);

(4) Whether the IRS claim, if deemed secured, is entitled to any post-petition interest, interest at the legal rate, interest at a rate determined by the cost of treasury bills, the interest rate provided in 26 USC § 6621 of the Internal Revenue Code, or at some other rate of interest; and

(5) Whether the IRS is entitled to prepetition penalties on its claim.

The IRS claim involves unpaid taxes for the years 1976 through 1978. There is considerable discrepancy from the various statements by the IRS as to what the tax is for each year and what the total tax liability is for the three year period of tax delinquency. A document entitled "Agreement As to Final Determination of Tax Liability" ("Final Agreement") shows a total tax liability of $47,536.89. This document is dated June 21, 1980 and signed by the debtors and by the Associate Chief for the Commissioner of Internal Revenue. A tax notice dated October 22, 1982 shows a total tax liability of $68,250.78. On December 7, 1982 the IRS issued a Notice of Assessment which shows a total tax liability of $66,052.69. Finally, on September 2, 1983 the IRS filed a proof of claim in the debtors' chapter 13 case showing a total tax liability of $74,621.78.

The following table is a breakdown of these four different totals. It shows the portion of each total attributed per tax year and the portion attributed to principal, interest and penalties.

### Summary of Tax Claims

| | 6/21/82 Final Agreement | 10/22/82 Tax Notice | 12/7/82 Assessment Notice | 9/2/83 Proof of Claim |
|---|---|---|---|---|
| 1976 | 16,664.22 | 27,308.89 tax | 27,308.89 | $19,163.85 tax |
| | 2,499.63 | 882.06 int. | | 12,187.83 int. |
| | | | | 958.19 pen. |
| 1977 | 23,981.00 | 37,670.21 tax | 37,670.21 | 23,981.00 tax |
| | 3,597.15 | 1,269.35 int. | | 15,828.82 int. |
| | | | | 1,199.05 pen. |
| 1978 | 794.89 | 1,073.59 tax | 1,073.59 | 794.89 tax |
| | | 35.50 int. | | 440.88 int. |
| | | 11.18 pen. | | 67.27 pen. |
| Total | $47,536.89 | $68,250.78 | $66,052.69 | $74,621.78 |

■ Because the IRS has failed to file a memorandum to explain the discrepancies, the court will accept the lowest amounts owing shown in each category of any IRS statement. Therefore, the court accepts the tax amounts listed as owing in the June 21, 1982 "Agreement As to Final Determination of Tax Liability", i.e. $16,664.22 for 1976; $23,981.00 for 1977; $794.89 for 1978. Furthermore, the Final Agreement states that the taxpayer and IRS Commissioner "mutually agree that such liability so determined shall be final and conclusive subject, however, to reopening in the event of fraud, malfeasance or misrepresentation of material fact, and the required application of statutory provisions expressly providing that effect be given thereto as stated therein notwithstanding any law or rule of law other than Section 7122." Therefore, the amounts listed in the Agreement as owing under 26 U.S.C. § 6653(b), $2,499.63 for 1976 and $3,597.15 for 1977, are accepted as well. The court also accepts the interest amounts listed as owing in the October 22, 1982 Tax Notice, i.e. $882.06 for 1976; $1,269.35 for 1977; $35.50 for 1978. Since the prepetition penalties were neither listed in the Notice of Assessment nor covered by the Final Agreement, these claims are allowed as unsecured claims in the amount of $11.18 as shown in the Tax Assessment for 1978 and $958.19 and $1,199.05 as shown in the IRS Proof of Claim for tax years 1976 and 1977.

■ However, the question arises as to how the government's unsecured prepetition penalty claim should be treated. 11 U.S.C. § 502(b), the provision of the Code which prescribes the grounds upon which certain claims may be disallowed, does not contain a specific provision disallowing claims for penalties. Under 11 U.S.C. § 507(a)(6)(G), the government's penalty claim is not entitled to priority because the penalty is not in compensation for actual pecuniary loss. Further, although 11 U.S.C. § 726(a)(4) subordinates such punitive penalties in liquidation cases, there is no similar provision in chapter 13. Therefore, there is no statutory basis for treating unsecured prepetition punitive penalties differently from other general unsecured claims.

Based on the foregoing, the court finds that the government's prepetition tax penalty claim must be treated as a general unsecured claim.

To summarize, the court concludes that the debtors owe the IRS $41,440.11 ($16,664.22 plus $23,981.00 plus $794.89) on taxes, $6,096.78 ($2,499.63 plus $3,597.15) as additional amounts under 26 U.S.C. § 6653(b), $2,186.91 ($882.06 plus $1,269.35 plus $35.50) on interest, and $2,168.42 ($11.18 plus $958.19 plus $1,199.05) on prepetition penalties.

■ The court also concludes that except for amounts which represent prepetition penalties the IRS claim may be treated

as a secured claim. Thus, the IRS secured claim totals $49,723.80 and its unsecured claim on prepetition penalties totals $2,168.42. The IRS filed and perfected its notice of tax lien on December 13, 1982. The debtors filed their chapter 13 petition well after that date on July 12, 1983. The fact that the lien is statutory rather than consensual does not transform it into an unsecured claim. *See In re Rogers Refrigeration, Inc.*, 33 B.R. 59, 10 B.C.D. 1396 (Bkrtcy.D.Or.1983).

■ The debtors propose in their chapter 13 plan to modify the IRS claim. 11 U.S.C. § 1322(b)(2) permits modification of "the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence ..." In the present case, the debtors' principal residence is encumbered by the IRS lien. However, the exception in § 1322(b)(2) regarding the principal residence is limited to a "security interest" which is defined under 11 U.S.C. § 101(37) as a "lien created by an agreement". Since the IRS lien is a statutory rather than a consensual lien, it can be properly modified. This does not mean that the IRS claim is unsecured.

Since the court has already found that the IRS holds a secured claim, except as to prepetition penalties, it is not necessary for the court to decide whether, if unsecured, the IRS claim would be entitled to priority under 11 U.S.C. § 507(a)(6).

■ 11 U.S.C. § 1325(a)(5)(B)(ii) provides that a chapter 13 plan must provide that the holder of an allowed secured claim receive the value, as of the effective date of the plan, of its allowed claim. This requires that the payments to the secured creditor have a "present value" equal to the creditor's allowed secured claim. 5 Collier on Bankruptcy, 1325.01[2][E][2][A][2] (15th Ed.1982). Present value is a market rate concept. It is determined by use of an interest rate which properly reflects the cost to the creditor of not receiving the full amount of its secured claim upon confirmation of the debtor's plan. This rate of interest is commonly referred to as a "dis-

count factor", e.g. *In re Fisher*, 8 C.B.C.2d 628 (Bkrtcy.D.Kan.1983). The debtors contend that the IRS claim, if deemed secured, is not entitled to any post petition interest. The discount factor, however, is distinguishable from post petition interest which is disallowed under 11 U.S.C. § 502(b)(2).

■ The plain meaning of § 1325(a)(5)(B)(ii) negates the debtors' assertion that the holder of a secured claim is not entitled to any interest or discount factor where a plan proposes, as here, payment to a creditor in a stream of payments over the life of a chapter 13 plan. Hence, the appropriate discount factor must be determined.

There is no consensus among the courts on what constitutes an appropriate rate of interest. The various rates of interest which have been held applicable may be summarized as follows:

(1) the contract rate of interest. *In re Cooper*, 11 B.R. 391, 7 B.C.D. 854 (Bkrtcy.N.D.Ga.1981); *In re Smith*, 4 B.R. 12 (Bkrtcy.E.D.N.Y.1980);

(2) the legal rate of interest. *In re Anderson*, 8 C.B.C.2d 1016 (Bkrtcy.S.D. Ohio 1982); *In re Crockett*, 3 B.R. 365 (Bkrtcy.N.D.Ill.1980);

(3) the rate of interest determined under 26 USC 6621 of the Internal Revenue Code. *In re Crotty*, 11 B.R. 507 (Bkrtcy.N.D.Tex.1981); *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980); *In re Busman*, 5 B.R. 332 (Bkrtcy.E.D. N.Y.1980);

(4) the treasury bill rate. *In re Wilkinson*, 33 B.R. 933 (Bkrtcy.S.D.N.Y. 1983); *In re Tacoma Recycling, Inc.*, 23 B.R. 547 (Bkrtcy.W.D.Wash.1982); and

(5) the treasury bill rate with adjustments. *In re Hatcher*, 34 B.R. 566 (Bkrtcy.W.D.La.1983), *In re Fisher*, 8 C.B.C.2d 628 (Bkrtcy.D.Kan.1983) (treasury bill rate plus a 1% risk factor); *In re Willis*, 6 B.R. 555 (Bkrtcy. N.D.Ill.1980) (treasury bill rate plus an upward adjustment of .05%).

Three Circuit Courts of Appeal have considered what rate of interest should be applicable to secured claims. Unfortunately, none of these opinion is dispositive of the issue. In *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982), the court held that, in the absence of special circumstances, the bankruptcy court should use the current market rate of interest used for similar loans in the region in determining the rate of interest on a secured claim in a chapter 13 case. Thus, the court rejected the use of an "unrelated arbitrary rate". However, no specific guidance on how a court is to determine the current market rate is given, other than the statement that bankruptcy courts are generally familiar with the current conventional rates on various types of consumer loans and that proof can easily be adduced where the rate is disputed.

The courts in the *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983) and *Matter of Burgess Wholesale Mfg. Opticians, Inc.*, 721 F.2d 1146 (7th Cir.1983) were faced with the question of how to treat priority tax claims in a chapter 11 case. 11 U.S.C. § 1129(a)(9)(C), which prescribes the treatment of priority tax claims in chapter 11, is materially similar to 11 U.S.C. § 1325(a)(5)(B)(ii).

■ The Court of Appeals in *Southern States* held that the Bankruptcy Court erred in applying the rate of interest established under 26 U.S.C. § 6621 less a 1% reduction for "rehabilitation aspects" of the debtor's plan. The court held that although the interest rate currently charged by the IRS on delinquent federal taxes under 26 U.S.C. § 6621 may be relevant to determining prevailing market rate, it should not be looked at exclusively in determining the interest rate to be applied in calculating deferred payments under 11 U.S.C. § 1129(a)(9)(C). The court also rejected the Bankruptcy Court's 1% reduction for the "rehabilitation aspects" of the chapter 11 plan. The court noted that the chosen rate of interest must be reasonable in light of the risks involved. Thus, the court must consider the prevailing market rate

for a loan of a term equal to the payout period with due consideration of the quality of the security and the risk of subsequent default. *Southern States* at 651 *citing* 5 Collier on Bankruptcy 1129.03, at 1129–65 (15th ed. 1982). Although the evidence presented in *Southern States* established that the prevailing market rate for unsecured loans at the time the plan became effective was greater than 14%, the court held that the appropriate rate to apply was 12% because the parties had agreed to the 12% rate at the debtor's confirmation hearing.

In *Burgess Wholesale* the court held that the government was entitled to post-confirmation interest on an unsecured tax claim, but remanded the case to the bankruptcy court to determine the appropriate rate of interest to be applied.

Of the Courts of Appeal decisions, *Southern States* is the most instructive.

■ This court agrees with the Eleventh Circuit in its rejection of the statutory rate of interest contained in § 6621 as inadequate. The appropriate rate of interest is the prevailing market rate. The IRS rate has undergone several adjustments over the last few years. The rate is now redetermined twice a year based on 100% of the average adjusted prime rate charged by commercial lenders during a six-month period ending September 30 and March 31. *In re Fisher*, 8 C.B.C.2d 628 (Bankr.D.Kan. 1983). In view of recent fluctuations in the prime rate, the IRS rate has often differed and will often differ significantly from actual market rates. Therefore, the IRS rate is not reflective of current market conditions on the effective date of the plan.

In addition, the meaning of "prime" is not clear. Prime is supposed to represent the rate charged by commercial banks to prime commercial loan customers. Factors which influence the determination of prime are the general level of money rates, the availability of reserves, general business conditions, size and term of loan, and geographic variations. However, a recent study showed that nearly 70 percent of large corporations are offered below-prime

loans. Moreover, elements of profit and administration and collection costs are included in the rate. *Fisher* at 636–638. Finally, the IRS rate reflects concerns inapposite to a chapter 13 case, e.g. deterence of tax evasion and the compulsion of timely tax payment and reporting.

Based on the foregoing, the court holds that the IRS rate is not an accurate or adequate discount rate for determining present value in chapter 13 cases.

The court also finds that a discount rate based on an unadjusted contract rate of interest is not a proper chapter 13 discount rate.

It is obvious that a contract rate of interest is not an adequate indicator of current market conditions over an extended period of time. Moreover, a fixed contract rate contains elements of profit and other costs which are inappropriate in a chapter 13 case.

Using a legal rate of interest established by state law is likewise deficient because a legal rate, although amended periodically is also fixed and thus unresponsive to current market conditions. *See In re Roxbury Residential, Inc.*, 35 B.R. 348 (Bkrtcy.D. Conn.1983).

■ An appropriate interest rate or discount factor must take into account certain salient variables, e.g. the length of the payout period, the type of claim involved, the quality of the security, the risk of subsequent default and the effects of inflation.

■ The court believes that a discount rate based on the equivalent coupon yield rate of 52 week treasury bills auctioned every four weeks is the best indicator of present value for purposes of a chapter 13 plan. Treasury bills are auctioned at least monthly. Therefore, they accurately reflect current market conditions.

Although the coupon yields on treasury bills reflect an element of profit inasmuch as they represent the federal government's cost of acquiring money in the open market, this factor is offset by the fact that treasury bills constitute a riskless rate of interest because they are not considered subject to default. It should be noted that the risks inherent in a chapter 13 case are less than the risks associated with non-bankruptcy cases because the court's approval of a chapter 13 plan presumes the debtor's ability to complete the plan. In addition, if the plan is successful, the cost of collection is eliminated. *Fisher* at 631–32. However, not all plans are successful. Therefore, although comparatively less, the risks involved in a chapter 13 plan must be considered. On the other hand, profit is not an appropriate factor to consider in determining present value in a chapter 13 case. This is especially true when the claim under consideration is that of the IRS which is not in the business of making loans and earning profits.

The fact that the sale of treasury bills does not adequately reflect risk and profit for purposes of a chapter 13 case is not fatal to the court's use of the treasury bill rate as the appropriate discount factor. The court therefore finds that off-setting these factors is proper.

Based on the foregoing, it appears that the objection by the IRS to confirmation of the debtors' plan must be sustained. An order will be entered herein denying confirmation of the plan.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 752.