**In re WELCO INDUSTRIES, INC., Debtor(s).**

**UNITED STATES of America, Internal Revenue Service, Appellant(s),**

v.

**WELCO INDUSTRIES, INC., Appellee(s).**

**In re William M. RAMSEY, dba William M. Ramsey, D.D.S., P.C., Debtor(s).**

**UNITED STATES of America, Internal Revenue Service, Appellant(s),**

v.

**William M. RAMSEY, dba William M. Ramsey, D.D.S., P.C., Appellee(s).**

**In re WILLIAM M. RAMSEY, D.D.S., P.C., Debtor(s).**

**UNITED STATES of America, Internal Revenue Service, Appellant(s),**

v.

**WILLIAM M. RAMSEY, D.D.S., P.C., Appellee(s).**

BAP Nos. OR–85–1437–AsEAb,
OR–85–1445–AsEAb.

Bankruptcy Nos. 384–01077, 683–08102
and 683–08104.

United States Bankruptcy
Appellate Panel
of the Ninth Circuit.

Argued March 21, 1986.

Decided April 21, 1986.

Mark E. Nebergall, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellant(s).

Mager E. Mager, Portland, Or., for appellee(s).

Before ASHLAND, ELLIOTT and ABRAHAMS, Bankruptcy Judges.

## OPINION

CALVIN K. ASHLAND, Bankruptcy Judge:

The issues in these appeals are identical. The United States appeals from orders overruling the government's objections to Chapter 11 plans proposed by debtors. We reverse and remand.

## STATEMENT OF THE CASES

Each corporate debtor (Welco Industries, Inc. and William M. Ramsey, D.D.S., P.C.) is indebted to the Internal Revenue Service (IRS) for unpaid withholding and F.I.C.A. taxes. William M. Ramsey as an individual is liable for his income taxes and personally liable for withholding and F.I.C.A. taxes assessed against the professional corporation because he is its principal.

The Welco plan proposed to pay the IRS claim in deferred cash payments over three years; the Ramsey plans over four years. Each plan proposed to compensate the government for the time value of its claim by allowing an interest rate equal to the current coupon yield on treasury bills. The bankruptcy court in Welco used the coupon rate on current 3 year treasury notes, or 9½%. In the Ramsey cases, the court used the rate on 4 year treasury notes, or 9⅝%.

The government in each of the cases objected and argued that the rate established in § 6621 of the Internal Revenue Code of 1954 (26 U.S.C. § 6621) is the appropriate interest rate. The rate established by § 6621 then was 11%. The objections were overruled.

## ISSUE

*Whether the bankruptcy courts erred in allowing an interest rate on the government's proofs of claim other than the interest rate provided for in 26 U.S.C. § 6621.*

## DISCUSSION

Section 1129(a)(9)(C) of the Bankruptcy Code provides that a bankruptcy court shall confirm a plan of reorganization only

if the holder of a priority tax claim will receive "on account of such claim deferred payments ... of a value, as of the effective date of the plan, equal to the allowed amount of such claim." The legislative history of the code indicates that Congress used the phrase "value, as of the effective date of the plan" in order to insure that creditors with priority tax claims who were required to accept payments over time would receive deferred payments equivalent to the present value of their claims. See, e.g., 124 Cong.Rec. 32,406, 34,006 (1978) (joint explanatory statement of floor managers, Sen. DeConcini and Rep. Edwards, indicating governmental unit tax claims entitled to priority under § 507(a)(6) "may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax with the present value equal to the amount of the claim"); H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 408 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6364.

Although bankruptcy courts generally agree that creditors should receive interest on deferred tax payments pursuant to § 1129(a)(9)(C), they have not agreed on the proper method for determining the appropriate interest rate. *Matter of Southern States Motor Inns*, 709 F.2d 647, 651 (11th Cir.1983). *See*, for example, *In re Bay Area Services*, 26 B.R. 811 (M.D.Fla.1982) (in the absence of any contrary argument by debtor, government entitled to rate set in 26 B.R. 811 (M.D.Fla.1982) (in the absence of any contrary argument by debtor, government entitled to rate set in 26 U.S.C. § 6621); *In re Benford*, 14 B.R. 157 (Bankr. W.D.Ky. 1981) (prevailing market rate for consumer loan contracts); *In re Tacoma Recycling*, 23 B.R. 547 (Bankr.W.D.Wash. 1982) (rate established for interest on judgments in federal courts—§ 302(a) of the Federal Court Improvement Act of 1982).

The factors relevant in determining an appropriate interest rate are discussed in 5 Collier on Bankruptcy ¶ 1129.03, at 1129–65 (15th ed. 1982):

The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

IRS contends that the appropriate discount rate to provide the government with the present value of its priority claim is the rate provided by § 6621. The court in *In the matter of Southern States Motor Inn Inc.*, 709 F.2d 647 (11th Cir.1983) criticized the use of § 6621 in determining the appropriate interest rate for two reasons:

First, the § 6621 rate does not necessarily correspond with the prevailing market rate.

\* \* \* \* \* \*

Second, applying the § 6621 rate to all deferred payments under § 1129(a)(9)(c) ignores variations between the length of the payout period, the quality of the security, and the risk of subsequent default.

In *Southern States*, the court reversed the lower court for looking exclusively to § 6621 in establishing the proper interest rate and directed entry of judgment at an agreed rate which happened to be lower than the prevailing market rate.

The debtor contends that the current coupon yield rate of 52 week treasury bills is the appropriate rate. In this case, the bankruptcy court relied on *In re Mitchell*, 39 B.R. 696 (Bankr.D.Or.1984) in determining the appropriate interest rate. In *Mitchell*, the court noted that the applicable Chapter 11 and Chapter 13 provisions are virtually identical and recognized that the payout period must be considered in determining the appropriate interest rate. *Id.* at 701, 702. The court also addressed risks of default:

It should be noted that the risks inherent in a chapter 13 case are less than the risks associated with non-bankruptcy cases because the court's approval of a chapter 13 plan presumes the debtor's ability to complete the plan. In addition,

if the plan is successful, the cost of collection is eliminated.

*Id.* at 702. Under § 1325(a)(5)(B) a secured tax claim in a Chapter 13 is treated similarly to a tax claim under § 1129(a)(9)(C) in a Chapter 11.

The *Mitchell* court ruled that the appropriate interest rate is that which the government must pay to borrow funds for the length of the deferred payment period. We disagree with this result.

Treasury bills and notes reflect the return available on short-term low risk debts. We agree that court approval of a plan may diminish the risks involved in a coerced loan. Nevertheless, the coupon yield on treasury bills represents the federal government's cost of acquiring money in the open market. The coupon yield on treasury bills would be inappropriate since the government is not acquiring money, but is in effect loaning money to the debtors over three or four year periods. The I.R.S. rate is reassessed bi-annually. The rate is based on 100% of the average adjusted prime rate charged by commercial lenders.

 The appropriate interest rate is the prevailing market rate for that type and quality of loan. Current market conditions determine what the market rate will be. One factor that has an impact on that determination is the prime rate. Prime represents the rate charged by commercial banks to prime commercial loan customers. *Mitchell* at 701. Factors which influence the determination of prime are the general level of money rates, the availability of reserves, general business conditions, size and term of loan, geographic variations, elements of profit and collection costs. Generally, a statutory legal rate of interest would be insufficient to establish a market rate since it would be unresponsive to current market conditions. See *In re Roxbury Residential Inc.*, 35 B.R. 348 (Bkrtcy. D.Conn.1983). However, at times a fixed rate of interest that is periodically adjusted may accurately reflect market conditions.

 The IRS argued that the rate under § 6621 was intended to be a variable rate, adjusted every six months, and also, is alike binding upon the government when it owes refunds to taxpayers. The rate may be convenient to use but it is not the manner of assessing value in § 1129(a)(9)(C), as of the effective date of the plan, as contemplated by Congress. If Congress wishes to establish the use of 26 U.S.C. § 6621 in 11 U.S.C. § 1129(a)(9)(C) it can say so.

## CONCLUSION

Although the IRS agreed to accept a rate of 11% even if the market rate is higher, there is no evidence in the records of the cases to establish a rate greater than the rate provided by § 6621. A tabulation of rates contained in the government's memoranda submitted to the trial courts show higher rates but there was no proof or agreement to them.

We remand for determination of an appropriate interest rate which should be more in line with the prevailing market rate charged by commercial lenders taking into account the risk of default.