**In re John H. MARTIN, Peggy Martin, Debtors.**

**Bankruptcy No. 86–20742.**

United States Bankruptcy Court, D. Montana.

Sept. 3, 1987.

See also, Bkrtcy., 78 B.R. 593.

J. David Penwell, Bozeman, Mont., for debtors.

Doug James, Billings, Mont., for John Deere.

Ralph B. Kirscher, Missoula, Mont., for Sherick.

James M. Kommers, Bozeman, Mont., for First Sec. Bank of Bozeman.

Douglas Harris, Bozeman, Mont., for Dorn Equipment Co.

Lee Stokes, Bozeman, Mont., for New Holland Inc. a/k/a Sperry New Holland.

J. Richard Orizotti, Butte, Mont., for J.I. Case Credit Corp.

Richard C. Nellen, Bozeman, Mont., for First Sec. Bank of Idaho.

Dunlap and Caughlan, Butte, Mont., Trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Hearing has been held on Debtors' Chapter 12 Plan together with objections filed by John Deere Company, First Security Bank of Bozeman, Deutz-Allis Credit Corporation, New Holland, Inc., a/k/a Sperry New Holland, Rudolph M. and Sarah Sherick, J.I. Case Credit Corporation, Dorn Equipment Company and First Security Bank of Idaho. Objections filed by First Security Bank of Livingston have been withdrawn. Objections by First Security Bank of Bozeman as to the valuation of its collateral have been resolved by the Debtors' modification to the Plan which increases the value to $50,300.00. Most objecting creditors attacked the eligibility of the Debtors qualifying as family farmers under Chapter 12. The Court on May 11, 1987, entered its Order finding the Debtors do qualify as family farmers, and that Order is incorporated herein by reference. *In re Martin*, 78 B.R. 593, 4 Mont.B.R. 322 (Bankr.Mont.1987). In addition, the Court determined the Plan was not feasible because certain machinery required by the Debtors to perform their custom cutting operation had been repossessed. After an order to show cause hearing, that machinery has now been returned to the Debtors. The issues can be summarized as involving valuation of the Debtors' property, interest rates and term of repayment being contrary to "market rate" and feasibility, i.e., the Debtors will not be able to make the payments proposed under the Plan.

At the outset, the interest issue deserves discussion in light of controversy which has surfaced on that issue in almost every Chapter 12 case. The starting point is the case of *In re Welco Industries, Inc.*, 60 B.R. 880 (BAP 9th Cir.1986). *Welco's* holding as an appellate panel in this Circuit is binding on this Court under *In re Windmill Farms, Inc.*, 70 B.R. 618 (BAP 9th Cir.1987) (decisions of Bankruptcy Appel-

late Panel are binding on all of the districts in the Ninth Circuit). *Welco,* a Chapter 11 case, specifically rejected fixing an interest rate on the basis of treasury bills or notes, under 26 U.S.C. § 6621 governing interest rates on IRS claims, on rates established for judgments in federal courts and arguably on the prevailing market rate for consumer loan contracts. *Welco* held:

"The appropriate interest rate is the prevailing market rate for that type and quality of loan. Current market conditions determine what the market rate will be. One factor that has an impact on that determination is the prime rate. Prime represents the rate charged by commercial banks to prime commercial loan customers. *Mitchell* at 701 [39 B.R. 696 [Bank Or.1984]]. Factors which influence the determination of prime are the general level of money rates, the availability of reserves, general business conditions, size and term of loan, geographic variations, element of profit and collection costs.

\*    \*    \*    \*    \*    \*

We remand for determination of an appropriate interest rate which should be more in line with the prevailing rate charged by commercial lenders taking into account the risk of default." *Id.* at 883.

The eight elements described in *Welco* as bearing on interest rates raise troublesome problems in making a final determination of the appropriate market rate on a case-by-case basis. See *United States v. Neal Pharmacal Company,* 789 F.2d 1283, 1289 (8th Cir.1986); *In re Lewis Industries, Inc.,* 75 B.R. 862, 868, 4 Mont. B.R. 434, 443 (Bankr.Mont.1987). I interpret *Welco* to require the same case-by-case analysis in applying the "market rate" approach. Indeed, as stated in *Matter of Doud,* 74 B.R. 865, 867 (Bankr.S.D.Iowa 1987):

"The methods by which the courts have calculated the discount rate are varied. As delineated in the case of *In re Mitchell,* 39 B.R. 696, 700 (Bankr.D.Or.1984), the various rates that the courts have utilized includes: (1) the contract rate, (2) the legal rate, (3) the rate determined under 26 U.S.C. Section 6621 of the Internal Revenue Code, (4) the treasury bill rate, and (5) the treasury bill rate with adjustments made for risk.

\*    \*    \*    \*    \*    \*

Although *Monnier* [775 F.2d 1336 [8th Cir.1985]] and *Neal Pharmacal* involve Chapter 11 reorganizations, there is no reason to except Chapter 12 reorganizations from the market standard. Having determined that the market rate is the appropriate rate, a more difficult question is presented—what interest rate best represents the market rate?

\*    \*    \*    \*    \*    \*

\* \* \*, the Court in *Neal Pharmacal* points out the importance of determining the discount rate on a case by case basis. *Neal Pharmacal,* 789 F.2d at 1289."

Contrary to *Welco, Doud* adopted the treasury bill rate with adjustment for risk on a Farmers Home Administration secured claim, but used the contract rate, i.e., on a non-commercial rate, on three other loans by holding the lending policy of FmHA is a form of social welfare to assist under privileged farmers. *Id.* at 870. *Mitchell,* supra, noted in its decision in discussing prime rate that a recent study showed that nearly 70 per cent of larger corporations are offered below-prime loans, and elements of profit and administration and collection costs are included in the rate. *Id.* at 701–702. *Doud* states:

"Some of the same elements that reduce or eliminate risk in Chapter 13 cases are at work in Chapter 12 cases. The Chapter 12 trustee is charged with overseeing the affairs of the debtor thereby reducing the administrative and collection costs. *See generally* 11 U.S.C. Section 1202. Like Chapter 13, Chapter 12 requires that the court must make a feasibility determination. *See* 11 U.S.C. Section 1225(a)(6). Chapter 12 creditors therefore are offered a statutory presumption (albeit less sound in reality, as discussed below) of repayment upon confirmation. Also, application of a proper discount rate in a Chapter 12 setting should not focus on any profit factor for creditors." *Id,* at 869.

I do not necessarily agree that a commercial lender thrust into a reorganization case should be deprived of any profit on the restructured loan for that lender too must remain viable in order to insure available credit to all borrowers. *Doud* concedes there are risks inherent in the agricultural economy, including not only price for the products, but sustained yields of crops. Therefore, *Doud* adjusted the treasury bill rate up 2% to cover the risk factor. *Welco* too concludes that the market rate charged by commercial lenders must take into account the risks of default, evidently inferring, if not directly holding, that a risk factor may require adjustment of the prime rate.

Turning to the Debtors' proposed repayment schedule based on 20, 10 and 5 year term payments at 7% to 8% interest, the Debtors provide for total plan payments for 1987 to secured, unsecured and priority claims, plus 5% trustee fee, of $95,237.91 out of disposable income of $97,560.00. The bulk of Debtors' income is derived from custom haying and grain operations which are projected at $128,000.00 after expenses. The Debtors' cattle operation is projected to produce $15,000.00 net income. Secured claims of all classes scheduled for payment based on the Debtors' valuation total $468,082.64. The Debtors apply an interest rate ranging from 7% to 8%, so that an increase of just 1% in the market rate on the scheduled secured debt would place the Plan in jeopardy. The only saving feature is if the combine business exceeds their projected income. Debtor did testify that his projections of income were conservative. On rehearing on an Amended Plan, these projections should now be realized and Debtor's estimates can be tested.

I determine in this case that the present prime rate of 8¼% on secured claims is the market rate of interest, and that an additional ¾% interest should be added to cover the risk of default. By adopting the prime rate as the market rate, I find such rate encompasses all the elements which affect the market rate of interest on a current basis in a commercial setting. As an example, at the time of the confirmation hearing the prime rate was 7.5%, but has now increased to 8¼%. However, the Court is bound by 1225(a)(5) to find present value as of the effective date of the Plan, which is the date of confirmation. I turn now to the specific issues raised by various secured creditors.

■ 1. Real property. The Debtors are purchasing a 40 acre tract of land under a contract for deed which has been assigned to Rudolph and Sarah Sherick. The written contract provides for a lump sum payment due November 1, 1987, with interest payable at 9% per annum. The balance due on the contract on the petition date (December 11, 1986) was $34,126.61, with a daily accrual of interest at $7.68. The Debtors propose to restructure the balance due over a 20 year term with interest at 8% per annum, thereby calling for payments of $3,412.68 per year. I find from the evidence that the value of the real property is $48,000.00. Creditors Sherick are thus oversecured, and are entitled under Section 506(b) of the Code to interest at the contract rate and reasonable fees and costs on their claim. *In re Glenn,* 796 F.2d 1144 (9th Cir.1986). The Plan makes no provision for payment of post-petition interest and therefore must be rejected. See *In re Lewis Industries,* 75 B.R. 862, 869, 4 Mont. B.R. 434, 445–446 (Bankr.Mont.1987). I further find, based on the testimony presented by the creditors and the above discussion on market rate of interest, that the prevailing market rate for a contract for deed of the type involved in this case is 9%. Since the Plan provides for payment of interest at 8%, the Plan is deficient in that it does not meet the criteria of Section 1225(a)(5), which requires the secured creditor to retain its lien on the real property and receive present value of its allowed claim. *In re Indreland,* 77 B.R. 268, 4 Mont.B.R. 492, 501 (Bankr.Mont.1987). As to the 20 year term of repayment, *Indreland* holds:

"The test to be applied is set forth in *In re Jannson Charolais Ranch, Inc.,* 73 B.R. 125, 128, 4 Mont.B.R. 290 (Bankr. Mont.1987) where the proper rate of interest and loan term is determined by the prevailing market for the type and quality of the loan at issue. *In re Welco*

*Industries*, 60 B.R. 880, 882, 883 (BAP 9th Cir.1986). See also, *In re Lewis Industries*, 73 B.R. 862, 869, 4 Mont.B.R. 434, 446–447 (Bankr.Mont.1987)."

The evidence shows that the type of loan on a contract for deed would run from 15 to 20 years, with a balloon at 10 years. I find the loan term of 20 years is unreasonable. A 10 year term would be required, or at least a 20 year mortgage with a balloon at 10 years. The Plan therefore fails to meet the applicable criteria of 1225(a)(5).

2. John Deere claim. The Debtors owe John Deere two claims for purchase of machinery, which claims the Debtors fix at $46,081.00 and $114,000.00. Idaho Bank and Trust has a second lien on the three combines (together with other collateral) so that the Debtors evidently concede John Deere is oversecured. Again, the Plan proposes payments over 10 years at 8% interest. Deere states the current obligations on the notes are $42,800.00 and $111,411.84, so the Plan has overstated the amount due. According to Deere's testimony, which I find credible, the useful life of the machinery is 7 years. I find the prevailing market rate of interest is 9% on this type of loan and may be extended for 7 years under the Plan. Again, the Plan will have to be amended in accordance with this finding.

■ 3. J.I. Case Equipment claim. This creditor holds as collateral a John Deere Tractor which the Debtors value at the amount due, namely, $12,730.64. As determined above, I find the market rate of interest should be 9%, and the claim should be paid over 7 years. Again, the Plan will have to be amended in accordance with this finding. Case further argues the debt cannot be extended past the 3 year term of the Plan. The Debtors have classified all creditors holding security on farm machinery in one class, and proposed to repay each creditor in the class at 8% interest over 10 years. Under Sections 1222(b)(2), (5) and (9), fully matured notes may be restructured beyond the term of the Plan. Section 1222(b)(9) specifically allows restructure under Section 1225(a)(5) by providing the Plan may "(9) provide for payment of allowed *secured* claims consistent with Section 1225(a)(5) of this title, over a period

exceeding the period permitted under Section 1222(c)"; (emphasis added). Section 1222(c) states a Plan shall not provide for payments over 3 years, unless the Court extends the plan term to 5 years. There is no parallel provision in Chapter 13 like 1222(b)(9). As long as the Plan upon confirmation provides that the secured creditors will retain the lien securing the claim and be paid present value of the allowed claim, the Plan passes muster.

4. First Security Bank of Bozeman. While the matter is not entirely clear from the written memorandum, evidently the Debtors and this creditor have agreed to a repayment of the secured debt on the basis of $50,300.00, being the value of the collateral. Again, the Plan's proposal for repayment at 8% interest over 10 years is not reflective of market rate or term, which is 9% over 7 years. Thus, the Plan will have to be amended.

5. Sperry New Holland claim. Debtors' value this collateral at $34,500.00 against a debt of $25,907.00. The repayment is for 8 years at 8% under the Plan. I adopt the same holding as to interest rate and term for this creditor as discussed above and find the market interest rate is 9% with a term of 7 years.

■ 6. Dorn Equipment claim. The Debtors dispute the claim of Dorn Equipment and the Plan makes no provision for payment of the claim. Dorn filed objections to the eligibility of the Debtors as family farmers and objected to the provision for payment of $8,000.00 to Debtors' counsel. That objection will be decided after the Debtors' counsel files an appropriate request for award of attorney fees, detailing his hours of service and per hour rate. I note Dorn has filed a Proof of Claim in this case claiming $5,364.33. No objections to the claim have been filed by the Debtors pursuant to Rule 3007, Bankruptcy Rules, and thus the claim is prima facie proof of its validity.

■ 7. Other Objections. The Trustee complains about payments to four pre-petition unsecured creditors after the filing of this case. That matter should be properly addressed by the Trustee under a complaint filed pursuant to Rule 7001 for re-

covery of a preference. I reiterate as held on more than one occasion that a confirmation hearing in reorganization is not to be used as a litigating tactic. *In re Reilly*, 71 B.R. 132, 4 Mont.B.R. 150 (Bankr.Mont. 1987). Deere's objections along the same lines are subject to the same comment.

In summary, all objecting secured creditors, except Sherick, hold chattels as collateral and are to be dealt with under the Plan based on a market rate of 9% interest payable over 7 years, unless the creditor and Debtors consent to different form of repayment.

If the Debtors file an Amended Plan in accordance with this Order, the Debtors shall follow General Order 86–2 (entered November 26, 1986) and set forth a liquidation analysis so the Court may determine compliance with Section 1225(a)(4).

IT IS ORDERED the Debtors' Amended Chapter 12 Plan is denied confirmation, with leave of the Debtors to amend in 10 days, or this case will be dismissed.