OPINION OF THE COURT
WELLFORD, Circuit Judge:
I. OVERVIEW
The primary dispute in this appeal concerns the rate of postpetition interest to which plaintiffs, the Penn Hills School District and Allegheny County, Pennsylvania, are entitled in connection with their ov-erseeured prepetition tax claims against the defendants, numerous Chapter Thirteen bankruptcy debtors. Plaintiffs contend that interest should accrue at the applicable rates set forth in the Pennsylvania Municipal Code, and thus, that the bankruptcy and district courts erred in approving defendants’ bankruptcy plans, which proposed to pay postpetition interest at a substantially lesser rate. Having carefully considered this issue and the others presented in this appeal, we AFFIRM in part and REVERSE in part.
II. STATEMENT OF THE CASE
Samuel and Alice DeSarno, Laura and David Rankin, Stacy Johnson, and Alice Bo-nacci defaulted on real estate taxes owed to Allegheny County and the Penn Hills School District. Because the salient facts are identical as to each defendant, we limit our background discussion to the DeSarnos. After the Desamos defaulted on their tax obligations, plaintiffs filed secured claims against their principal residence in the approximate amount of $4,500. Under Pennsylvania law, these claims constitute first liens on the property and plaintiffs are entitled to receive interest on the underlying debts at certain statutorily prescribed rates. The DeSarnos’ residence is worth many times the amount of the principal debt plus interest; thus, plaintiffs’ claims are substantially oversecured.
In June 1993, to avoid a foreclosure on their house, the DeSarnos filed a voluntary petition for bankruptcy under Chapter Thirteen of the United States Bankruptcy Code. The DeSarnos subsequently filed a plan proposing to pay in full plaintiffs’ prepetition claims (100 percent of the principal debt plus interest at the statutory rates), but proposing to pay postpetition interest at a rate much lower than those prescribed by the relevant Pennsylvania statutes.
In November 1993, the bankruptcy court confirmed the DeSarnos’ plan subject to a determination of the appropriate postpetition interest rate. The bankruptcy court directed the parties to file briefs supporting then-respective positions, but did not schedule oral argument or conduct an evidentiary hearing on the matter. Allegheny County and Penn Hills argued at the confirmation hearing that they were entitled to interest at twelve and ten percent per annum, respectively, pursuant to Pennsylvania statutes. The DeSarnos, on the other hand, argued that plaintiffs’ postpetition claims were modifiable under 11 U.S.C. § 1322(b)(2) and that postpetition interest should be set to accrue at a “reasonable” rate, as opposed to the statutory rates.
In May 1994, the bankruptcy court confirmed the DeSarnos’ plan in its entirety, holding that plaintiffs’ claims were modifiable and that the proposed rate of postpetition interest met and exceeded the rate that the court determined to be reasonable. Thereafter, plaintiffs sought review of the plan in the district court. Notwithstanding initial concern over the bankruptcy court’s failure to hold an evidentiary hearing to aid in its determination of an appropriate interest rate; the district court affirmed the bankruptcy court’s decision. This timely appeal ensued. Defendant Stacy Johnson subsequently filed a cross-appeal challenging the applicable rate of prepetition interest for Allegheny County.
*1126 III.ISSUES ON APPEAL
The following issues are before us in this appeal and cross-appeal: (1) whether it was error to determine that Allegheny County is entitled under Pennsylvania statutory law to prepetition interest at a rate of twelve percent per annum; (2) whether the lower courts erred in holding that a tax claim secured by a statutory lien on a Chapter Thirteen debtor’s principal residence is modifiable pursuant to 11 U.S.C. § 1322(b)(2); and (3) if so, whether the reduced rate of postpe-tition interest approved by the lower courts provides plaintiffs with the “present value” of their claims pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).
IV.STANDARD OF REVIEW
We review the bankruptcy court’s findings of fact for clear error. Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 38 (3d Cir.1989). We exercise plenary review, however, in regard to the bankruptcy court’s “choice, application and interpretation of legal precepts.” Id. at 38-39.
V.DISCUSSION
A. Prepetition Interest
We first address whether the bankruptcy court correctly determined that Allegheny County is entitled to prepetition interest on its tax claims at a rate of twelve percent under Pennsylvania law. Although most of the defendants have conceded this point, defendant Johnson argues that the county is entitled to a maximum interest rate of only ten percent. We disagree.
Pursuant to 72 Pa. Stat. Ann. § 5648, “second class” Pennsylvania counties[1] are enti-tied to interest on all county tax delinquencies and may adopt a maximum interest rate of twelve percent per annum on these debts.[2] It is undisputed that Allegheny County is the only “second class” county for purposes of § 5648 and that its County Commissioners have chosen to charge tax debtors the maximum amount allowed under that statute. Nevertheless, Johnson argues that § 5648 conflicts with and is governed by 58 Pa. Stat. Ann. § 7143,[3] which provides that interest claims made by municipalities for unpaid taxes cannot exceed ten percent per annum.
We agree that § 7143 conflicts with § 5648, but we do not find § 7143 to be controlling. Notwithstanding Johnson’s assertions to the contrary, § 5648 is the more specific of the two statutes because it deals with tax delinquencies in second class counties. Further, the ten percent interest rate of § 7143, established by an amendment dated October 29, 1981, predates the twelve percent interest rate of § 5648, which was established on May 5, 1982. See Pa. Laws 319, No. 113, § 1; Pa. Laws 372, No. 106, § 1. Section 1933 of the Pennsylvania Statutory Construction Act of 1972 provides:
Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provisions shall prevail.
*1127 1 Pa. Cons.Stat. ANN. § 1933 (emphasis added). Based on § 1993, the special provision allowing twelve percent interest to second class counties embodied in § 5648 prevails over the general provision of § 7143 and must be construed as an exception to it.
To summarize, § 5648 is inconsistent with § 7143 because it specifically empowers the Allegheny County commissioners to establish an interest rate of up to twelve percent on delinquent taxes. Section 7143, on the other hand, provides for a maximum rate of only ten percent. Thus, the two statutes are in conflict because they authorize different rates. The commissioners, taking advantage of the full authorization of § 5648, established the applicable rate at twelve percent. We believe that § 5648 — the later, more specific statute — controls here. Accordingly, we hold that Allegheny County is entitled to prepetition interest at a rate of twelve percent per annum under § 5648 and thus AFFIRM the ruling of the lower courts on that issue.
B. Postpetition Interest
Turning to the next issue, we note that the parties agree that plaintiffs are entitled to some amount of postpetition interest on their claims, but they disagree as to the rate at which such interest should accrue. In this regard, plaintiffs first argue that the lower courts erred in holding that their claims to postpetition interest at the statutory rates are modifiable under II U.S.C. § 1322(b)(2). Alternatively, plaintiffs assert that the confirmed interest rates are insufficient to provide them with the present value, of their allowed secured claims under 11 U.S.C. § 1325(a)(5)(B)(ii). We address each of these contentions in turn.

(1) 11 U.S.C. § 1322(b)(2)

Section 1322(b)(2) of the Bankruptcy Code provides that Chapter Thirteen plans may “modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence.” 11 U.S.C. § 1322(b)(2) (emphasis added). Defendants concede that plaintiffs’ claims are secured by liens on their principal residences. Therefore, the key issue is whether those liens constitute “security interests” for purposes of the antimodification provision of § 1322(b)(2).
The Bankruptcy Code defines “security interest” as “a lien created by an agreement.” 11 U.S.C. § 101(51) (emphasis added). In contrast, the Code provides that the term “statutory lien” means a “lien arising solely by force of a statute on specified circumstances or conditions ... but does not include security interest or judicial hen.” 11 U.S.C. § 101(53) (emphases added). Because plaintiffs’ tax liens arose under state statute, and not from a consensual or voluntary agreement with the taxpayer defendants, we concur in the bankruptcy court’s ruling that those liens are not “security interests” for purposes of § 1322(b)(2).
The foregoing interpretation of § 1322(b)(2) is supported by substantial authority from other jurisdictions. See, e.g., In re DeMaggio, 175 B.R. 144, 146-47 (Bankr. D.N.H.1994) (holding that plain language and statutory history of § 1322(b)(2) establish that nonconsensual tax Hens do not fall within antimodification provision of that statute); In re Sabec, 137 B.R. 659, 667-68 (Bankr. W.D.Mich.1992) (finding antimodification provision of § 1322(b)(2) inapplicable because creditor’s interest in the principal residence of the debtor was a “lien,” rather than a “security interest,” based on the fact that it arose nonconsensually under state tax act); In re Venable, 48 B.R. 853, 856 (S.D.N.Y.1985) (holding that city’s tax Hen on debtor’s principal residence was modifiable despite § 1322(b)(2) because not consensual, and thus, not a “security interest”); In re Mitchell, 39 B.R. 696, 700 (Bankr.D.Or.1984) (finding IRS Hen on debtor’s principal residence modifiable because statutory, not created by agreement as required by § 1322(b)(2)); In re Seel, 22 B.R. 692, 695-96 (Bankr.D.Kan.1982) (holding modifiable a mechanic’s Hen on debtor’s principal residence because it was a “statutory Hen”). Nevertheless, plaintiffs urge us to hold that statutory tax Hens on principal residences are not modifiable under § 1322(b)(2) because Congress has historically made explicit reference to tax Hens in provisions of the Bankruptcy Code intended to affect such Hens. Plaintiffs further assert *1128 that the existence of public policy concerns analogous to those invoked by Congress in exempting liens for unpaid postpetition property taxes from the automatic stay indicates that Congress did not mean for tax liens to be modifiable under § 1322(b)(2). In light of the plain language of § 1322(b)(2), however, we must decline plaintiffs’ invitation to speculate as to the intent of Congress in this context. Where the statutory language is clear, our “ ‘sole function ... is to enforce it according to its terms.’ ” Rake v. Wade, 508 U.S. 464, 471, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

(2) 11 U.S.C. § 1325(a)(5)(B)(ii)

Our conclusion that plaintiffs’ claims are modifiable under § 1322(b)(2) does not dispose of this appeal. We must also determine whether the postpetition interest rate confirmed by the lower courts passes muster under 11 U.S.C. § 1325(a)(5)(B)(ii). In a Chapter 13 bankruptcy, the debtor is given the opportunity to retain property which would otherwise be subject to foreclosure by secured creditors. “In exchange for giving the debtor a right to continue possession of the property, § 1325(a)(5)(B) directs two things: (i) the secured creditor shall retain a continuing lien on the property; and (ii) the secured creditor shall receive from the debtor ‘the value, as of the effective date of the plan, of such property to be distributed under the plan on account of such claim [which shall be] not less than the allowed amount of such claim.’ ” GMAC v. Jones, 999 F.2d 63, 66 (3d Cir.1993) (quoting 11 U.S.C. § 1325(a)(5)(B)(ii)). The latter provision requires that the payments to the secured creditor have a “present value” equal to the creditor’s allowed secured Claim. 5 COLLIER ON BANKRUPTCY ¶ 1325.06[4][b][iii][B] (15th ed.1982). Present value is a market rate concept, determined by the use of an interest rate which fairly compensates the creditor for not receiving the full amount of its secured claim upon confirmation of the debtor’s plan. There is wide disagreement, however, as to what constitutes an appropriate rate of interest in this context. See In re Mitchell, 39 B.R. at 700. Although this court has posited a framework for determining an appropriate interest rate under § 1325(a)(5)(B)(ii) in the context of commercial creditors, neither this court nor the Supreme Court has addressed that issue in the context of nonconsensual tax lien creditors such as plaintiffs.
In the case at bar, the bankruptcy court began its § 1325(a) analysis with the statutory interest rates, but dismissed them as being in the nature of a penalty. According to the court, the statutory rates were raised by the Pennsylvania Legislature from six percent to their present levels in response to the extremely high commercial interest rates of the late 1970’s and early 1980’s. In the court’s view, the state’s purpose in raising the statutory rates was to “coerce and encourage prompt payment of taxes in competition with other higher commercial rates.”
Having rejected the statutory rates, the bankruptcy court attempted to determine a more reasonable interest rate, ultimately concluding that the appropriate rate under § 1325(a)(5)(B)(ii) was “the reasonable cost of interest to the [plaintiffs], as of the effective date of the plan, over a 60 month period.” Consulting published historical interest rates for municipal bonds, the court determined that, at a minimum, postpetition interest should accrue at 4.05 percent for Allegheny County and 4.30 percent for Penn Hills. Since defendants’ plans proposed to pay postpetition interest at seven percent per annum, they were confirmed.
Plaintiffs contend that the bankruptcy court’s rejection of the statutory rates was erroneous. In support of their position, plaintiffs rely principally upon our previously cited decision in Jones, wherein we addressed the issue of interest rates under § 1325(a) in the context of a commercial creditor. In Jones, General Motors Acceptance Corporation (“GMAC”) filed secured claims against a number of Chapter 13 debtors who, prior to taking bankruptcy, had purchased GMC trucks and defaulted on their financing obligations. Jones, 999 F.2d at 65. GMAC subsequently objected to the debtors’ bankruptcy plans on grounds that the proposed interest rates were too low to *1129 provide it with the present value of its claims under § 1325(a)(5)(B)(ii). Id. at 66.
Reversing the bankruptcy and district courts, this court held that the interest rate should be determined with reference to the purpose behind § 1325(a)(5)(B)(ii): “to put the secured creditor in an economic position equivalent to the one it would have occupied had it received the allowed secured amount immediately, thus terminating the relationship between the creditor and the debtor.” Id. at 66-67. The Jones court then rejected the bankruptcy court’s “cost of funds” approach, which looks to the rate at which the creditor can borrow funds, as falling short of this statutory objective by failing to account for: (1) the cost to the creditor of sustaining its lending relationship with the debtor past the point contemplated in the original agreement; and (2) the expectation of commercial creditors to make a profit when extending credit. Id. at 67, 69.
Ultimately, the Jones court concluded that a “coerced loan” theory[4] should provide the starting point for determining interest rates under § 1325(a)(5)(B)(ii). Id. at 67. Thus, the court held that the appropriate rate of interest is “that which the secured creditor would charge, at the effective date of the plan, for a loan similar in character,[5] amount and duration to the credit which the creditor will be required to extend under the plan.” Id. at 65 (footnote added). According to the court, this approach, unlike the cost of funds method, closely approximates the creditor’s immediate liquidation position because it recognizes that creditors incur costs associated with the coerced extension of credit and because it incorporates a consideration of profit into the determination of the § 1325(a) interest rate.[6] Id. at 67-69. The court further found the coerced loan approach appealing because it would reduce the litigation and transaction costs of Chapter 13 cases due to the fact that “regularly maintained documents of the creditor should make it possible for the debtor and creditor to stipulate on the interest rate the creditor would charge for a new loan of similar character, amount and duration.” Id. at 70.
Plaintiffs in the case at bar make two arguments based on Jones. First, they contend that the plain language of that decision requires that interest in the present case be set to accrue at the rates that they charge nonbankrupt, delinquent taxpayers (i.e., the statutory rates). Second, plaintiffs assert that the bankruptcy court erred in applying a cost of funds approach because that approach was specifically rejected in Jones. We agree with plaintiffs that the bankruptcy court’s analysis was flawed.
In our view, the district court plainly erred by looking solely to plaintiffs’ cost of funds in assessing the appropriateness of the proposed postpetition interest rates in this ease. As the Ninth Circuit has noted, such an approach forces a governmental creditor to
incur an unconditional obligation to repay the money it was required to borrow ... in exchange [for] only an inherently risky promise by the debtor to repay the same amount over the applicable time period at essentially the same rate paid by the government on its obligation.
In re Camino Real Landscape Maint. Contractors, Inc., 818 F.2d 1503, 1506 (9th Cir. *1130 1987) (citation omitted).[7] Thus, the governmental creditor is “worse off as a result of the exchange.” Id. Moreover, “there is no indication that Congress meant to subsidize debtors by making available to them the government’s own favorable rate of interest.” Id. Thus, we hold that for plaintiffs to be properly compensated, consistent with Jones, postpetition interest rates must be set in accordance with the municipalities’ costs of maintaining their creditor relationship. Since municipalities are not for-profit lending institutions and do not regularly extend loans that can be used to determine the appropriate rate of interest, the case at bar is not on all-fours with Jones. Nevertheless, we do not believe that Jones is totally inapplicable in this situation, despite GMAC’s status as a for-profit entity, or that the “cost of funds” approach would be proper if applied to the debtor instead of the creditor. Therefore, the principles of Jones must be given effect, even if it is not factually identical.
We believe that the closest analog to the market loan in Jones is the statutory interest rate here. While the analogy is not perfect, it is sufficient: an entity forced to delay payment that it is entitled to receive is, in effect, extending a loan. And the rate that the municipality charges for those that coerce loans by not paying their property tax bills is twelve percent. In fact, as the difficulties in arriving at another rate have shown, the statutory rate is really the only practical and reasonable rate to apply. The statutory rate also serves the administrative efficiency goal of establishing a readily ascertainable “market” rate that will not require the time and expense of case-by-case litigation and potentially inconsistent results.
Political and financial market forces will generally operate to keep the statutory rate reasonable. The rate is set by elected officials accountable to citizens who, after all, must balance their desire to make their neighbors pay their property taxes with the consideration that they themselves may be in default some day. In addition, the financial market might provide the best check against oppressive rates. If a debtor can, in fact, do better than the statutory rate, he or she will rationally do what consumers normally do when rates (for instance, mortgage notes) become higher than the market. The debtor will “refinance” by obtaining the new loan at the lower available rate, using the funds to pay off the old loan. Indeed, the statutory rate at issue in this ease — twelve percent — is not unreasonable. Credit card companies regularly charge their customers, who are not even high credit risks, interest at rates as high as eighteen percent. The debtors in this case, of course, are in bankruptcy and, although the municipality currently holds liens that are oversecured, property values can decline.
In support of our holding, we note that numerous courts have held that nonconsensual overseeured creditors are entitled to receive the rates of interest dictated by the statutes under which their liens arose, unless those rates constitute a penalty. See, e.g., Galveston Ind. Sch. Dist. v. Heartland Fed. Sav. & Loan Ass’n, 159 B.R. 198, 204 (S.D.Tex.1993); see also In re Parr Meadows Racing Ass’n, 880 F.2d 1540, 1549 (2d Cir.1989), cert. denied sub nom., Suffolk County Treasurer v. Barr, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). Although the bankruptcy court initially determined that the statutory rates at issue in this appeal are in the nature of a penalty, we find this decision to be in error. See Meilink v. Unemployment Reserves Commission, 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942). In Meilink, a unanimous Supreme Court held that a statutorily imposed interest rate of twelve percent on debts owed to a state’s unemployment fund did not constitute a penalty within the meaning of the Bankruptcy Code. In that regard, the Court stated:
It is common knowledge that interest rates vary not only according to the general use value of money but also according to the hazard of particular classes of loans. Delinquent taxpayers as a class are a poor credit risk; tax default, unless an incident *1131 of legitimate tax litigation, is, to the eye sensitive to credit indications, a signal of distress. A rate of interest on tax delinquencies which is low in comparison to the taxpayer’s borrowing rate — if he can borrow at all — is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes.
Another variable is the amount necessary to compensate for the trouble of handling the item. The legislature may include compensation to the state for the increased costs of administration in the exaction for delay in paying taxes without thereby changing it from interest to penalty-
id at 567, 62 S.Ct. at 391.[8]
We believe that Judge Sarokin’s arguments for using the prime rate prove too much. If the prime rate represents the appropriate rate in the commercial marketplace, why did not the Jones court use the prime rate in that case, which, after all, involved a commercial lender?
Moreover, that the Pennsylvania legislature has not seen fit to change the statutory rate on delinquent tax loans for some years, in our view, does not render the twelve percent rate penal or unreasonable. If the statutory rate, as suggested by the dissent, “far exeeed[s] what the Plaintiffs could obtain under current market conditions,” then the debtors (or the bankruptcy trustee) can proceed to obtain the more favorable rate in the market.
VI. CONCLUSION
Based on the foregoing, we AFFIRM the district court’s award of prepetition interest to Penn Hills and Allegheny County at the statutory rates of ten and twelve percent per annum, respectively. We REVERSE, however, the decisions of the bankruptcy court and district court on the issue of postpetition interest rates and hold that Penn Hills and Allegheny County are also entitled to postpe-tition interest at the respective statutory rates.

. The counties in Pennsylvania are divided into nine separate classes based on population. 16 Pa. Stat Ann. § 3210.

. Section 5648 provides, in pertinent part, that “[i]n counties of the second class, all county taxes after the same become delinquent, as now provided by law, shall bear interest from the time said taxes become delinquent at a rate determined by the county commissioners not to exceed twelve per centum per annum until paid....”

.Section 7143 states, in relevant part, that:
Where the provisions of any other act relating to claims for taxes ... utilizes the procedures provided for in this act and where the provisions of such other act establishes a different rate of interest for such claims or liens, the maximum rate of interest of ten per cent per annum as provided for in this section shall be applicable to the claims and liens provided for under such acts....

. The basic idea behind this theory is that, " 'In effect, the [bankruptcy] law requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan.' " Jones, 999 F.2d at 67 (quoting Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427, 429 (6th Cir.1982)).

. The court defined loan of "similar character” to mean a “loan that the creditor regularly extends to other debtors who are not in bankruptcy but who are otherwise similarly situated to the debtor who is the recipient of the loan coerced by the chapter 13 proceeding and who are seeking the same kind of credit (e.g., auto loan, home equity loan, etc.).” Id. at 67 n. 4.

.The court acknowledged that, in making the "coerced” loan, GMAC would not experience all the costs involved in making a completely new extension of credit. Id. at 68. However, the court concluded that these savings were offset by the fact that the coerced loans would be more expensive than new loans because they would not contain the "equity cushion" customarily incorporated into new loans. Id. Additionally, GMAC would have increased the rate of interest on a new loan based on the debtor's poor credit history. Id.

. Although Camino Real involved a present value determination under 11 U.S.C. § 1129(b)(2)(A)(i)(II), the present value language in that section is virtually the same as that employed in § 1325(a)(5)(B)(ii), and most courts have treated the two statutes as identical. In re DeMaggio, 175 B.R. at 150.

. We also note the Supreme Court's recent decision in Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), in which the Court provided for broad postpetition interest in a Chapter Thirteen situation for the benefit of an oversecured mortgage holder despite the fact that the instrument itself was silent on arrearag-es.